OPINION
{¶ 1} Defendant-Appellant, Kenneth M. Williams, appeals a judgment of the Logan County Court of Common Pleas, imposing sentence on Williams after his conviction for one count of forgery. Williams asserts that he was denied his right to effective assistance of counsel, because his trial counsel failed to impeach one of the State's witnesses with a prior conviction. Additionally, Williams asserts the court erred in ordering Williams to pay restitution for an economic loss attributed to a crime for which Williams was acquitted. Finding that Williams was not denied his right to effective assistance of counsel but that the court did err in its order for restitution, we affirm in part and reverse in part.
 {¶ 2} In May of 2003, the Logan County Grand Jury returned an indictment against Williams for two counts of forgery in violation of R.C. 2913.31(A)(2), felonies of the fifth degree. The indictment alleged, in counts one and two, that Williams had cashed two counterfeit checks on December 29, 2002, and December 30, 2002, respectively.
 {¶ 3} Williams entered a plea of not guilty to the indictment, and a jury trial was conducted in September of 2003. At the trial, the State presented the testimony of several witnesses and exhibits, to show that defendant had cashed two counterfeit checks at Kroger market in Bellefontaine, Logan County, Ohio.
 {¶ 4} The State presented the testimony of Ginny Keiffer, Emily Vondenhuevel and Leslie Warne, all Bellefontaine Kroger store employees. Both Keiffer and Vondenhuevel were customer service representatives. Keiffer testified that on December 29, 2002, Williams had cashed a check for four hundred and fifty-five dollar and sixty-two cents at the Kroger store. She identified the check that had been made out to Williams, as well as her handwriting and identification number on the back of the check. Vondenhuevel testified that she had cashed a four hundred and forty-five dollar and thirty-two cent check for Williams on December 30, 2002. She also identified the check that had been made out to Williams, as well as her identification number on that check. Leslie Warne, the Bellefontaine Kroger's manager, testified that approximately a month after Williams had cashed the checks, she was contacted by Kroger's bank and was advised that both checks cashed by Williams were counterfeit.
 {¶ 5} The State also presented the testimony of Steve Akers. According to Akers testimony, he had created and printed the checks, which Williams cashed, on a computer. He stated that he had found the name and address of the company that he printed on the checks in the phone book and that he had made up the routing and account numbers. He testified that Gary Doseck had asked him to print out the two checks made out to Williams and that Doseck was to give him half of the amount of the check in exchange for his services.
 {¶ 6} Akers also testified that he had met Williams, but that they had only talked for a brief period of time. Akers described Williams as "a little slow" and "not full functioning." Akers also testified that, prior to Williams cashing the first check, Doseck had told Williams that he needed Williams help in cashing the check, because Doseck did not have any identification, which was needed to cash the check. Additionally, Akers said that when Williams asked about the check, Doseck told Williams that the check was legitimate and that Williams would not get into trouble for cashing it. Akers also testified that he was unsure whether Williams was aware that the second check was counterfeit. Finally, Akers testified that Williams did not receive any money for cashing the checks for Doseck.
 {¶ 7} Investigator Brandon Standley testified that he had interviewed Williams when he was arrested. He stated that Williams admitted to cashing the two checks, but stated that he believed the checks were legitimate. Standley's taped interview with Williams was played for the jury. During that interview, Williams stated he did cash the checks, but only because he believed the checks were legitimate.
 {¶ 8} The State also presented the testimony of Gary Doseck, Meredith Story and Alisa Piquet. Doseck testified that he had nothing to do with the check cashing scheme. Story testified that Doseck had asked her to cash checks for him in Williams' presence and that she refused because she believed the checks were counterfeit. Finally, Piquet testified that she heard Williams state that he had been paid forty dollars for cashing a check.
 {¶ 9} Williams testified on his own behalf. Williams testified that he was illiterate, but could read and write his own name. Again, Williams stated that he had cashed the first check for Doseck because Doseck told him that he needed some money to help his grandmother who was ill and that Doseck did not have any identification to cash the checks. He testified that when he cashed the second check Doseck again told him that he did not have any identification. Williams stated that he believed Doseck worked for the construction company whose name was on the checks, that he believed the checks were good, and that he did not receive any money for cashing the checks.
 {¶ 10} Finally, Brian Coil testified on Williams' behalf. After being admonished of his constitutional right not to incriminate himself, Coil testified that he had also cashed counterfeit checks on Doseck's behalf. He testified that he had cashed four checks for Doseck, who told him he did not have any identification to cash the checks. Further, he stated Doseck misled him to believe the checks were legal.
 {¶ 11} Upon the presentation of all evidence, the jury found Williams guilty on the second count of forgery, which involved the check cashed on December 30, 2002, but not guilty on the first count, which involved the check cashed on December 29, 2002. Subsequently, Williams was sentenced on the one count of forgery to five years of community control, including a term at West Central Community Correctional Facility. Additionally, the trial court ordered Williams to pay restitution in the amount of nine hundred and thirty-five dollars and ninety-four cents. It is from this sentence that Williams appeals, presenting the following assignments of error for our review.
 Assignment of Error No. I The Defendant was denied the effective assistance of counselbecause trial counsel failed to introduce evidence of the felonyconviction of a witness for the prosecution.
 Assignment of Error No. II The trial court erred in ordering the Defendant-Appellant topay restitution for economic loss attributable to a crime forwhich he was acquitted.
 {¶ 12} In the first assignment of error, Williams argues that he was denied his right to the effective assistance of counsel because his trial court failed to introduce evidence of Alisa Piquet's prior conviction, in order to impeach her testimony.
 {¶ 13} To establish ineffective assistance of counsel, Williams must demonstrate both that counsel's performance fell below the objective standard of reasonable competence and that there is a reasonable probability that, but for such deficiency, the outcome of the trial would have been different. State v.Scott, 101 Ohio St.3d 31, 2004-Ohio-10, ¶ 40, citing Stricklandv. Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052; Statev. Bradley (1989), 42 Ohio St.3d 136, paragraphs two and three of the syllabus.
 {¶ 14} "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." Bradley, 42 Ohio St.3d at paragraph three of syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. State v.Williams, 99 Ohio St.3d 493, 2003-Ohio-4396, ¶ 163, citingStrickland, 466 U.S. at 694.
 {¶ 15} "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. There are numerous ways for counsel to provide effective assistance in any given case. In light of these facts, debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45, 49.
 {¶ 16} Williams argues that his trial counsel was ineffective for failing to impeach Piquet with a prior felony conviction of drug conveyance to a detention facility. Williams' trial counsel never used this conviction to impeach Piquet's testimony on cross-examination.
 {¶ 17} We cannot conclude that William's counsel was not acting as the counsel guaranteed by the Sixth Amendment simply because he did not impeach Piquet. Even if trial counsel's performance could be deemed deficient, the error did not prejudice Williams. Piquet testified that she was a friend of Williams, that he had asked her to testify on his behalf, and that she had heard Williams state he had been paid forty dollars for cashing a check. She also testified on cross-examination that she had no knowledge as to whether Williams actually believed the checks were legitimate.
 {¶ 18} We cannot say that but for Williams' failure to impeach Piquet's testimony with her prior conviction the outcome of the trial would have been different. Her testimony was that she heard a conversation that Williams "had cashed a check and received forty dollars," that she did not know what kind of check it was and that the conversation took place sometime in December or January. (Trial transcript pp. 92-93.) The jury only convicted Williams on one of the two forgery charges. Apparently, Piquet's testimony was not determinative for the jury.
 {¶ 19} Furthermore, there was ample other evidence from which the jury could have inferred Williams' knowledge as to the second forged check, including the fact that a second payroll check was being cashed only one day after the first check was cashed.
 {¶ 20} Thus, finding that Williams has failed to demonstrate that "but for" this error the result of the trial would have been different, the first assignment of error is overruled.
 {¶ 21} In the second assignment of error, Williams asserts that the court erred in ordering restitution in the amount of $935.94,[1] the total for both counterfeit checks. Specifically, Williams argues that because he was acquitted on the first count of forgery, the court erred in awarding restitution for that check. Because restitution is limited to the actual loss caused by the offender's illegal conduct for which he was convicted, we agree.
 {¶ 22} R.C. 2929.18(A) permits a court that is imposing a sentence for a felony conviction to sentence the offender to any financial sanction or combination of financial sanctions authorized by law. Among the sanctions authorized by R.C.2929.18(A) is restitution. R.C. 2929.18(A)(1) allows the sentencing court to order "restitution by the offender to the victim of the offender's crime * * * in an amount based on the victim's economic loss." Economic loss is defined as "any economic detriment suffered by a victim as a result of the commission of a felony * * *." R.C. 2929.01(M). Because we are asked to construe the legal meaning of this statute, we conduct a de novo review.
 {¶ 23} When ordering restitution, the trial court must limit its award to the actual economic loss caused by the crime for which the offender was convicted. State v. Hafer (2001),144 Ohio App.3d 345, 348; see, also, State v. Hooks (2000),135 Ohio App.3d 746, 749. Thus, as a matter of law, an offender cannot be ordered to pay restitution for damage arising from a crime of which he was not convicted.
 {¶ 24} Here, the trial court ordered Williams to pay restitution in the amount of $935.94, the total for both counterfeit checks. However, Williams was only convicted of forgery on the second count. The check in the second count totaled $445.32. Thus, the trial court was only authorized to order restitution in the amount of $445.32.
 {¶ 25} Finding the trial court erred in ordering restitution on both checks, the second assignment of error is sustained.
 {¶ 26} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court as to the order of restitution, and affirm the judgment in all other respects. The matter is remanded for further proceedings in accordance with this opinion.
Judgment affirmed in part and reversed in part and causeremanded.
 Shaw, P.J., and Bryant, J., concur.
[1] While the trial court states that both checks together total $935.94, the actual total of both checks is $900.94. We are unable to find anything in the record to support the additional thirty-five dollars added by the court.