OPINION
{¶ 1} Defendant-appellant, Carl Pietrangelo, ("Pietrangelo") appeals the judgment of the Lake County Court of Common Pleas, convicting him of one count of drug trafficking, a felony of the fifth degree, in violation of R.C. 2925.03, and ordering him to pay restitution to the Lake County Narcotics Agency ("LCNA") in the amount of $2,200. We affirm the conviction, and reverse the trial court's order of restitution.
 {¶ 2} On December 20, 2002, following an investigation by the LCNA, the Lake County Grand Jury returned a secret indictment against Pietrangelo, charging him with two counts of trafficking in cocaine, pursuant to R.C. 2925.03, Count One being a fourth degree felony and Count Two being a third degree felony.
 {¶ 3} The charges arose from a series of controlled buys of cocaine, made by CI 538, a confidential informant working undercover for the LCNA. Count One arose from a controlled buy which took place on May 25, 2000, in which CI 538 purchased an "eight-ball" of cocaine from Pietrangelo for $200. Count Two arose from a second controlled buy, which occurred on September 18, 2001, after CI 538 arranged a purchase of half an ounce of cocaine from Pietrangelo for $650. In both cases, the LCNA provided the money for the purchase of the cocaine through CI 538's handler, Special Agent 68.
 {¶ 4} The case proceeded to jury trial on June 2, 2003. The state presented three witnesses: CI 538, Special Agent 68 of the LCNA, and Douglas Rohde ("Rohde"), a forensic chemist and toxicologist from the Lake County Crime Laboratory. At the conclusion of the State's case-in-chief, Pietrangelo made a Crim.R. 29 motion for acquittal, which was denied. The defense called no witnesses. The jury returned a verdict of guilty on Count One, a lesser-included offense of trafficking in cocaine, a fifth degree felony, by finding that the offense was not committed in the vicinity of a juvenile. The jury returned a verdict of not guilty on Count Two.
 {¶ 5} On July 17, 2003, the trial court sentenced Pietrangelo to three years of community control sanctions, further ordering that Pietrangelo serve 90 days in Lake County Jail, with credit for four days time served, and that Pietrangelo enter and successfully complete the Jail Treatment Program. In addition, the trial court ordered that Pietrangelo make restitution in the amount of $2,200 to the LCNA for their "economic loss."
 {¶ 6} Pietrangelo timely appealed, asserting five assignments of error:
 {¶ 7} "[1.] The trial court erred in imposing restitution in the instant action.
 {¶ 8} "[2.] Trial counsel was ineffective for failing to move for dismissal of count one of the indictment based on pre-indictment delay.
 {¶ 9} "[3.] Trial counsel was ineffective for failing to seek ineffective in failing [Sic] to move to sever count eleven, robbery, from the trial of the remaining counts.
 {¶ 10} "[4.] It was plain error for the court to allow testimony of an alleged third `controlled buy' that did not result in criminal charges.
 {¶ 11} "[5.] The trial court failed to make a finding that the defendant's sentence is consistent with similarly situated offenders."
 {¶ 12} In his first assignment of error, Pietrangelo complains that the trial court committed plain error in ordering restitution, since the amount of $2,200 does not reflect any economic loss suffered by any recognized victim of his conduct. A reviewing court will take notice of plain error when a provision of a criminal sentence is not supported by statute. See, State v. Rohda, 135 Ohio App.3d 21, 25, 1999-Ohio-886. Pietrangelo argues that a narcotics agency attempting to recover money used in making a controlled drug buy is not a victim as contemplated by R.C. 2929.18(A)(1), the restitution statute. This argument presents an issue of first impression for this court.
 {¶ 13} R.C. 2929.18(A)(1) provides that, a court imposing sentence on a felony offender may require the offender to make restitution "to thevictim of the offender's crime * * * in an amount based on the victim'seconomic loss." (emphasis added). "Economic loss" is defined as "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense." R.C. 2929.01(M). "Generally, the right to order restitution is limited to the actual damage or loss caused by the offense of which the defendant is convicted." State v. Agnes, 11th Dist. No. (Oct. 6, 2000) 99-L-104, 2000 Ohio App. LEXIS 4653, at *23-*24, quoting State v. Williams (1986), 34 Ohio App.3d 33, 34. "[A]s a matter of law, an offender cannot be ordered to pay restitution for * * * a crime of which he was not convicted." State v. Williams, 3rd Dist. No. 8-03-25, 2004-Ohio-2801, at ¶ 23; State v. Hooks, (2000),135 Ohio App.3d 746, 749; State v. Brumback (1996),109 Ohio App.3d 65, 82.
 {¶ 14} On appeal, the State concedes that the award of $2,200 was improper, since Count One, the only charge on which Pietrangelo was convicted, arose from a $200 controlled buy of cocaine. However, the state proffers that an order of restitution in the amount of $200 is appropriate, since the LCNA was, in a sense, a "victim" of the crime because it suffered a "loss" as the result of Pietrangelo's criminal act. We disagree.
 {¶ 15} A victim of a crime is defined as the person or entity that was the "object" of the crime. State v. Samuels, 4th Dist. No. 03CA8, 2003-Ohio-6106, at ¶ 5, citing Black's Law Dictionary (5th Ed. 1979) 1405. In certain circumstances, a government entity may be considered a victim of a crime under R.C. 2929.18(A)(1): For example, when government funds are embezzled or when government property is vandalized. Id. However, a government entity voluntarily advancing its own funds to pursue a drug buy through an informant is not one of the scenarios contemplated by R.C. 2929.18(A)(1). Id. at ¶ 10.
 {¶ 16} Moreover, federal courts have uniformly held that investigatory agencies conducting undercover operations involving the use of government funds to purchase drugs are not "victims" as contemplated by the federal restitution statute. See, United States v. Meacham (C.A.6, 1994),27 F.3d 214, 218-219; Gall v. United States (C.A.6, 1994), 21 F.3d 107,108; United States v. Cottman (C.A.3, 1998), 142 F.3d 160, 168; UnitedStates v. Khawaja (C.A.11, 1997), 118 F.3d 1454 (applying to "sting operations" in general); United States v. Gibbens (C.A.1, 1994), 25 F.3d 28,32-33.
 {¶ 17} Furthermore, in cases where a specific statutory scheme does not exist, the majority of state courts that have considered this issue under their restitution statutes "have likewise concluded that the government is not a victim entitled to restitution where public moneys are expended in pursuit of solving crimes, as these expenditures represent normal operating costs." State v. Sequiera (Haw.App. 2000),995 P.2d 335, 344-345 (listing Califiornia, Illinois, Minnesota, Nevada, New Jersey, New York, Wisconsin among the states that adhere to this rule). Although we acknowledge the State's legitimate interest and entitlement, in certain cases, to defray the spiraling costs of criminal investigation on behalf of the taxpayer, we agree with the reasoning of the Fourth District, the federal courts, and the majority of the states that, absent an express statement from the legislature authorizing trial courts to sentence criminal defendants to pay restitution to law enforcement agencies for this purpose, we should not, as an appellate court, take it upon ourselves to judicially rewrite the statute. Pietrangelo's first assignment of error has merit.
 {¶ 18} Pietrangelo's second and third assignments of error, since they both pertain to alleged ineffective assistance claims, will be addressed together for the purpose of judicial economy. Pietrangelo argues that his counsel was ineffective for both failing to move for dismissal for failure to prosecute and for failing to move to sever trial of the two counts against him.
 {¶ 19} To establish a claim of ineffective assistance of counsel, the defendant must demonstrate both "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense."Strickland v. Washington (1984), 466 U.S. 668, 687.
 {¶ 20} "[T]he proper standard for attorney performance is that of reasonably effective assistance * * * [and] the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.
 {¶ 21} Reversal of a conviction, therefore, places the burden on the defendant to show that counsel's deficient performance raises a reasonable probability that, but for counsel's errors, the result of the trial would have been different. See, State v. Bradley (1989),42 Ohio St.3d 136, 142 (citation omitted); State v. Henderson, 11th Dist. No. 2001-T-0047, 2002-Ohio-6715, at ¶ 15.
 {¶ 22} In his second assignment of error, Pietrangelo, relying onUnited States v. Lovasco (1977), 431 U.S. 783, argues that defense counsel was ineffective for failing to argue that a delay of over two years between the act alleged in Count One (the first controlled buy) and the date the Lake County Grand Jury returned an indictment, prejudiced him. We disagree.
 {¶ 23} The United States Supreme Court has held that the speedy trial guarantee under the Sixth Amendment is not applicable to pre-indictment delays. United States v. MacDonald (1982), 456 U.S. 1, 6; See also,United States v. Marion (1971), 404 U.S. 307, 313. However, the Ohio Supreme Court has held that "[a]n unjustifiable delay between the commission of an offense and a defendant's indictment therefor, whichresults in actual prejudice to the defendant, is a violation to the right to due process of law under Section 16, Article I of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution," in certain narrowly-defined circumstances. State v. Luck
(1984), 15 Ohio St.3d 150, at paragraph two of syllabus.
 {¶ 24} Lovasco sets forth a two-part balancing test to determine whether a preindictment delay has violated the defendant's right to due process: First, the defendant must demonstrate proof of actual prejudice. Second, the prejudice suffered must be the result of the state having no justifiable reason for the delay which caused the prejudice. Id. at 153-154, 158, citing Lovasco, 431 U.S. at 789-790.
 {¶ 25} Pietrangelo, based on the Supreme Court's decision in Doggettv. United States (1992), 505 U.S. 647, 652, argues that since the delay between the date of the first controlled buy and his indictment was greater than one year, such delay was "presumptively prejudicial." Thus, under the Lovasco test, Pietrangelo asserts that the state's failure to demonstrate that the delay was justifiable requires his conviction be overturned. Pietrangelo's reliance on Doggett is misplaced.
 {¶ 26} In Doggett, the "presumptively prejudicial" delay applied to an 8 1/2-year delay between the defendant's indictment and his arrest. No such delay occurred here. The Supreme Court has held that "the applicable statute of limitations is * * * the primary guarantee against bringing overly stale criminal charges." Marion, 404 U.S. at 322 (citation omitted). Under R.C. 2901.13, the statute of limitations for a felony is six years. Pietrangelo's indictment was issued well before the expiration of the statutory period.
 {¶ 27} Furthermore, Pietrangelo fails to point to anything in the record demonstrating prejudice which would implicate a denial of due process. Examples of factors which may indicate actual prejudice resulting from pre-indictment delay include such things as unavailability of key witnesses, fading memories, and loss of evidence. Luck,15 Ohio St.3d at 154.
 {¶ 28} In the case at bar, the only witnesses called during trial were the State's witnesses. Pietrangelo did not offer testimony or evidence in his defense, nor did he allege that any was lost as the result of the delay. Since Pietrangelo failed to produce any evidence satisfying the first prong of the Lovasco test, we need not discuss the second prong. Pietrangelo's argument is not well-taken.
 {¶ 29} In his third assignment of error, Pietrangelo argues that counts one and two should have been severed, since trying the cases together "enhanced the risk that the jury would view Mr. Pietrangelo as a hardened drug dealer and stirred the passions and prejudices of the jury." We disagree.
 {¶ 30} "The law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged `are of the same or similar character.'" State v. Lott (1990), 51 Ohio St.3d 160, 163 (citation omitted). A defendant may move for severance of the offenses under Crim.R. 14, upon a showing of prejudice. Id. "A defendant claiming error * * * under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it could weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial." State v. Torres (1981), 66 Ohio St.2d 340, at syllabus. A jury is presumed capable of segregating the proof on multiple charges when the evidence as to each is uncomplicated. Id. at 343, citing Statev. Roberts (1980), 62 Ohio St.2d 170, 175.
 {¶ 31} This court has stated that joinder of offenses is "in the interest of judicial economy when it can be done without prejudicing a defendant's ability to defend himself." Belknap v. Vigorito, 11th Dist. No. 2003-T-0147, 2004-Ohio-7232, at ¶ 18. Here, the evidence was uncomplicated and distinct and the witnesses testifying were the same as to each count for which Pietrangelo was charged. Moreover, Pietrangelo's ability to defend himself was not compromised, as his primary strategy for defending himself was to attack the credibility of the State's witness CI 538, who was the State's main witness as to both charges. Finally, Pietrangelo was convicted on a lesser included offense with respect to Count One and was acquitted on Count Two. Since Pietrangelo cannot demonstrate that his rights were prejudiced by having Counts One and Two tried together, he likewise is unable to demonstrate ineffective assistance of trial counsel for not filing a motion to sever. Pietrangelo's second and third assignments of error are without merit.
 {¶ 32} In his fourth assignment of error, Pietrangelo alleges that the trial court committed plain error by allowing testimony relating to an alleged third controlled buy, for which he was not charged.
 {¶ 33} In the absence of an objection, a trial court may rule evidence inadmissible to avoid plain error. Crim.R. 52(B). Plain error is to be invoked only "under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, at paragraph three of syllabus. The test for "plain error" is enunciated under Crim.R. 52(B). In order for Crim.R. 52(B) to apply, a reviewing court must find that (1) there was an error, i.e., a deviation from a legal rule; (2) that the error was plain, i.e., that there was an "obvious" defect in the trial proceedings; and (3) that the error affected "substantial rights," i.e., affected the outcome of the trial.State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68 (citations omitted).
 {¶ 34} Under Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." R.C. 2945.59 codifies the exceptions for "other acts" evidence, stating, "[i]n any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent * * * may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 35} Evidence of a defendant's other acts is admissible under R.C.2945.59, "only when it tends to show one of the matters enumerated in that statute and when it is relevant to prove the defendant's guilt of the offense in question." State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph one of syllabus. "Because R.C. 2945.59 and 404(B) codify an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict." Statev. Broom (1988), 40 Ohio St.3d 277, 281 (citations omitted).
 {¶ 36} Under the facts of the instant case, we find that the evidence was not relevant to prove Pietrangelo's guilt with respect to Counts One or Two. According to the testimony of both CI 538 and Special Agent 68, an attempted third buy took place on October 1, 2001, about two weeks after the second controlled buy, which resulted in Count Two. It was later found that the substance that Pietrangelo sold to CI 528 was not cocaine. Even if we were to presume that the alleged sale was minimally probative to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," the sale of a counterfeit substance was in no way relevant in proving Pietrangelo's guilt to the other counts for which he was charged. Nevertheless, we find the admission of testimony related to the third controlled buy constituted harmless error.
 {¶ 37} In determining whether an error is harmless, "[t]he question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." State v. Murphy (May 3, 1984), 10th Dist. No. 82AP-989, 1984 Ohio App. LEXIS 9096, at *7 (citations omitted). We find that there is no reasonable possibility that the evidence might have contributed to Pietrangelo's conviction, since, as we mentioned earlier, Pietrangelo was found guilty of a lesser charge on Count One and acquitted on Count Two. Pietrangelo's fourth assignment of error is without merit.
 {¶ 38} In his fifth assignment of error, Pietrangelo alleges that the trial court "failed to insure that the sentence imposed * * * was consistent with the sentences imposed on similarly situated offenders." However, Pietrangelo has failed to provide a sentencing transcript. This court has repeatedly held that when a defendant fails to provide a proper and complete transcript, this court has no alternative but to conclude that the defendant cannot demonstrate an appellate claim, and we presume the regularity of the trial court's proceedings. State v. Yankora, 11th Dist. No. 2000-A-0033, 2001 Ohio App. LEXIS 1230, at *4 (citations omitted). As we have no record of the trial court's sentencing findings, we cannot address this assignment of error.
 {¶ 39} For the foregoing reasons, we reverse the judgment of the Lake County Court of Common Pleas and enter judgment in favor of Pietrangelo with respect to the trial court's order of restitution to the Lake County Narcotics Agency in the amount of $2,200. We affirm the trial court's judgment in all other respects.
Ford, P.J., Rice, J., concur.