JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Charles Burneson ("Burneson"), appeals his conviction. Finding merit to the appeal, we modify his conviction, vacate his sentence, and remand for resentencing.
 {¶ 2} In 2006, a jury found Burneson guilty of theft, a fourth degree felony. He was sentenced to six months in prison. The following evidence was presented at trial.
 {¶ 3} In 2004, Mike Newell ("Newell") contacted Noell Sivertsen ("Sivertsen") of the Community Alliance Network of Thoroughbred Ex-Racehorses of Ohio ("CANTER") to donate two of his race horses, Jakeman (a bay gelding) and For All You Girls (a bay mare).[1] CANTER is an organization which transitions ex-racehorses into other "careers." When CANTER had a stable available for a horse, a representative from CANTER would pick up the horse and deliver it to the stable. At the time Newell contacted Sivertsen, however, CANTER had no space available for the horses. Sivertsen told Newell that CANTER would pick up the horses when it had room.[2] Newell also told Burneson's co-defendant, John Queen ("Queen"), that he was donating his horses to CANTER.[3] A few weeks later, when Newell donated *Page 3 
a third horse to CANTER, he asked Sivertsen for tax receipts for Jakeman and For All You Girls. Sivertsen told Newell that CANTER had never received those horses.
 {¶ 4} Blair Mullen and John Chatterton ("Chatterton"), Newell's employees, testified that they last saw Jakeman with Queen. Queen picked up Jakeman and told them that CANTER had room for the horse. Chatterton also testified that he directed Queen to the stall where For All You Girls was located so she could also be delivered to CANTER. Another witness testified that she saw Burneson lead For All You Girls from Thistledown's premises. Burneson testified that he led For All You Girls to a trailer for Queen. He observed another horse on the trailer, and he believed that Queen was taking the two horses to CANTER. He also testified that he took two of his horses, Remember the Mane and Walnut Slew, to Darcie Campbell's ("Campbell") farm to be boarded.[4] He testified that he sold these horses for $500 to Ron Andio ("Andio"), a horse auctioneer.
 Rebuttal Witness {¶ 5} Burneson now appeals, raising four assignments of error. We will first address the third assignment of error, in which he argues that the trial court abused its discretion by allowing the rebuttal testimony of a defense witness, Kathy Ackman *Page 4 
("Ackman"). He contends that Ackman was not on the State's witness list as required by Crim.R. 16.
 {¶ 6} An abuse of discretion requires a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 450 N.E.2d 1140. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301.
 {¶ 7} Crim.R. 16 provides that, "* * * [u]pon motion of the defendant, the court shall order the prosecuting attorney to furnish to the defendant a written list of the names and addresses of all witnesses whom the prosecuting attorney intends to call at trial * * *."
 {¶ 8} Evid.R. 611 empowers trial courts to exercise "reasonable control over the mode and order of interrogating witnesses * * *." Whether to permit a witness to be recalled to the stand to give additional testimony is a matter committed to the sound discretion of the trial court." State v. Sims (1981), 3 Ohio App.3d 321,445 N.E.2d 235. (Citations omitted).
 {¶ 9} In the instant case, Burneson called Ackman as a defense witness. On cross-examination, she testified that she ceased working for Burneson in 2004. She also testified that Burneson transported Remember the Mane and Walnut Slew to Campbell's farm for Andio to purchase. Prior to any further testimony the next *Page 5 
morning, the State requested that the trial court allow Ackman to be recalled because of newly discovered information. The State had obtained documentation which contradicted Ackman's testimony that she ceased working for Burneson in 2004. The State submitted an affidavit which was attached to Burneson's brief in opposition to Ackman's motion for summary judgment in another matter filed in Berea Municipal Court. In that affidavit, Burneson stated that Ackman had worked for him in 2005. Also, Ackman had sworn in an affidavit that she worked for Burneson in 2005.
 {¶ 10} This new evidence was discovered subsequent to Ackman's dismissal from the stand. The State requested the right to recall her as a witness when the new information was brought to its attention. There was no way for the State to know that Ackman had worked for Burneson after the date to which she had testified. In reviewing the evidence, the trial court found that there was sufficient evidence to warrant Ackman's being recalled to clarify her testimony. Thus, we find that the trial court did not abuse its discretion in allowing Ackman to be recalled as a witness.
 {¶ 11} Therefore, the third assignment of error is overruled.
 Sufficiency of the Evidence {¶ 12} In the first assignment of error, Burneson argues that there was insufficient evidence to sustain his conviction. In the second assignment of error, he argues that his conviction is against the manifest weight of the evidence because the *Page 6 
State failed to establish the fair market value of the horses. Because Burneson is essentially arguing the sufficiency of the evidence, we will address these assignments of error together.
 {¶ 13} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380,390, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 Venue {¶ 14} Burneson first argues that the State failed to produce sufficient evidence that the theft of Jakeman and For All You Girls occurred in Cuyahoga County.
 {¶ 15} Under R.C. 2901.12, "[t]he trial of a criminal case * * * shall be held in * * * the territory of which the offense or any element of the offense was committed." Furthermore, "[w]hen it appears beyond a reasonable doubt that an offense or any element of an offense was committed in any of two or more jurisdictions, but it cannot reasonably be determined in which jurisdiction the offense or element was committed, the offender may be tried in any of those jurisdictions." Id. *Page 7 
 {¶ 16} The testimony in the instant case established that Newell, as the owner of Jakeman and For All You Girls, wished to donate his horses to CANTER. Both individuals who worked for CANTER testified that Burneson did not have permission to pick up Jakeman or For All You Girls from Thistledown, which is in Cuyahoga County. Furthermore, one of Newell's employees testified that she saw Burneson leading For All You Girls to a trailer off of Thistledown's premises. Campbell testified that she boarded For All You Girls and an all brown bay gelding at her farm at Burneson's request.[5] Thus, in viewing the evidence in the light most favorable to the prosecution, we find sufficient evidence to support that the theft of Jakeman and For All You Girls occurred in Cuyahoga County.
 {¶ 17} Accordingly, the first assignment of error is overruled.
 Value {¶ 18} Burneson further argues that the State failed to present any evidence to support that the value of the horses was between $5,000 and $100,000, making the theft a fourth degree felony.
 {¶ 19} Burneson was convicted of theft pursuant to R.C. 2913.02, which provides that:
"(A)(1) No person, with purpose to deprive the owner of property * * *, shall knowingly obtain or exert control over * * * the property * * * [w]ithout the consent of the owner or person authorized to give consent. *Page 8 
 "(B)(2) Except as otherwise provided in this division or division (B)(3), (4), (5), (6), (7), or (8) of this section, a violation of this section is petty theft, a misdemeanor of the first degree. If the value of the property or services stolen is five hundred dollars or more and is less than five thousand dollars * * *, a violation of this section is theft, a felony of the fifth degree. If the value of the property or services stolen is five thousand dollars or more and is less than one hundred thousand dollars, a violation of this section is grand theft, a felony of the fourth degree.* * *"
 {¶ 20} R.C. 2913.61(D) provides the following criteria to "value" stolen property:
 "(3) The value of any real or personal property that is not covered under division (D)(1) or (2) of this section, and the value of services, is the fair market value of the property or services. As used in this section, `fair market value' is the money consideration that a buyer would give and a seller would accept for property or services, assuming that the buyer is willing to buy and the seller is willing to sell, that both are fully informed as to all facts material to the transaction, and that neither is under any compulsion to act."
 {¶ 21} In reviewing the record, we find that the State failed to produce sufficient evidence to prove that the horses were valued between $5,000 and $100,000. Newell, the owner of the horses, testified that he did not know how to put a value on a "retired" horse. He also testified that the horses had "no nominal value" because they were retired. However, there was evidence that Burneson sold an all brown bay gelding (Jakeman) and For All You Girls to Andio for $500. Andio picked up the horses from Campbell's farm and gave $500 to Campbell. Burneson and Queen then obtained the $500 payment from Campbell.
 {¶ 22} The State failed to present evidence as to good faith offers a purchaser would make for the horses or to present expert testimony as to the value of the horses. Thus, based on the State's evidence, we cannot say that sufficient evidence *Page 9 
was presented to convict Burneson of theft of property valued between $5,000 and $100,000.
 {¶ 23} Because the State failed to meet its burden of establishing the horses' value necessary for sentencing as a fourth degree felony theft offense, the second assignment of error is sustained. However, this error does not mandate the reversal of Burneson's conviction. It warrants a reduction only in the degree of the offense. Value was established at $500, making the theft a fifth degree felony. Thus, we modify his conviction and vacate his sentence and remand for resentencing as a fifth degree felony.[6] See State v. Holloman (Sept. 14, 2001), Hamilton App. No. C-000866.
 {¶ 24} In the fourth assignment of error, Burneson argues that the trial court erred by failing to instruct the jury as to the definition of "value" as provided in R.C. 2913.61. Because we find insufficient evidence as to the value of the horses being between $5,000 and $100,000, the fourth assignment of error is rendered moot.
 {¶ 25} Accordingly, Burneson's conviction is modified, his sentence is vacated, and the matter is remanded for resentencing as a fifth degree felony theft offense.
It is ordered that appellee recover of appellant the costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 10 
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for proceedings consistent herewith.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., J. and CHRISTINE T. McMONAGLE, J. CONCUR
[1] Newell owns and trains thoroughbred racehorses at Thistledown Racetrack ("Thistledown") in North Randall.
[2] On occasion, the person donating the horse had to wait for CANTER to pick up the horse because of stable availability.
[3] Queen worked at Thistledown Racetrack. On two prior occasions, he had picked up donated horses on CANTER's behalf at the request of his girlfriend, Sivertsen.
[4] Testimony established that Remember the Mane and Walnut Slew had significant white markings, unlike Jakeman and For All You Girls.
[5] Jakeman is an all brown bay gelding.
[6] Property valued at $500 or more and less than $5,000 is a fifth degree felony. See R.C. 2913.02. *Page 1