[Cite as *State v. Jones*, 2010-Ohio-2704.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NOS.  08 JE 20 |
| PLAINTIFF-APPELLEE, | ) | 08 JE 29 |
| | ) | |
| - VS - | ) | O P I N I O N |
| | ) | |
| CORNELL JONES, III, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |


CHARACTER OF PROCEEDINGS:       Criminal Appeal from Common Pleas
                                Court, Case No. 07CR155A.


JUDGMENT:                       Conviction and Sentence Affirmed;
                                Restitution Order Vacated.


APPEARANCES:
For Plaintiff-Appellee:         Attorney Thomas Strauss
                                Prosecuting Attorney
                                Attorney Jane Hanlin
                                Assistant Prosecuting Attorney
                                16001 State Route Seven
                                Steubenville, Ohio  43952

For Defendant-Appellant:        Attorney John Scaccia
                                536 West Central Avenue, Second Floor
                                Springsboro, Ohio  45066


JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite


                                Dated:  June 8, 2010

VUKOVICH, P.J.

¶{1}   Defendant-appellant Cornell Jones III appeals from the judgment of the Jefferson County Common Pleas Court, which sentenced appellant after a jury found him guilty of drug trafficking and drug possession with major drug offender specifications.  The issues on appeal concern the six-year additional sentence for the major drug offender specification, the validity of a restitution order, the denial of a continuance, the exclusion for cause of an African-American juror due to her knowing appellant and expressing difficulty with sitting in judgment of him, the informant's testimony identifying appellant's handwriting, alleged prosecutorial misconduct in closing arguments, and ineffective assistance of counsel.

¶{2}   For the following reasons, appellant's assignments of error are overruled.  However, the restitution order is vacated as it was plain error to use restitution to reimburse the police department for expending funds to discover evidence against appellant, e.g. the informant's wages and buy money.  Appellant's conviction and sentence are affirmed in all other aspects.

## STATEMENT OF THE CASE

¶{3}   Steubenville police officers were informed by a neighboring task force that one of their confidential informants had information that appellant was attempting to collect enough money from buyers to travel to Detroit to purchase two kilograms of cocaine.  The informant, who had known appellant since 1999, then worked with Steubenville police.  She placed recorded telephone calls to appellant.  Police watched her meet with appellant once in his Chevrolet Suburban and once in his BMW.

¶{4}   At the second meeting on Friday, November 23, 2007, police videotaped the meeting and recorded the conversation.  (Tr. 175, 183).  The informant provided appellant with $4,000 in police money to fund the Detroit drug buy from which she was to receive 5.5 ounces of cocaine.  (Tr. 77, 177-178, 183, 196).  She informed appellant that she was going to resell her share to buyers in Pennsylvania.  (Tr. 79-80).  He informed her that he would be back from Detroit between 7:00 and 7:30 a.m. on Saturday.  (Tr. 95).  The police watched appellant leave town in his Acura with codefendants, Nicholas Blackburn and Thomas Staudacher.  (Tr. 186).

**¶{5}** A search warrant was issued for appellant's vehicle upon his return from Detroit. His Acura was stopped upon reentering town at 6:00 a.m. on Saturday, November 24, 2007. (Tr. 166). Two bricks of cocaine, weighing nearly two kilograms, were discovered in a duffle bag in the trunk. Appellant's wallet contained a piece of paper, referred to by the prosecution as a ledger, which contained various amounts with corresponding nicknames. (Tr. 193-194). For instance, a shortened form of the informant's first name was listed next to "4000," and "Cor" (presumably short for Cornell) was listed next to "12000." (Tr. 196, 199, 215). The informant identified the handwriting on the ledger as belonging to appellant. (Tr. 102-103).

**¶{6}** Appellant was indicted for drug trafficking, a first degree felony due to the amount of cocaine weighing over 1000 grams. See R.C. 2925.03(A)(2), (C)(4)(g). Three forfeiture specifications, representing each vehicle used, were added to this count. In addition, appellant was indicted for drug possession, also a first degree felony due to the amount of cocaine. See R.C. 2925.11(A), (C)(4)(f). Both counts were accompanied by a major drug offender specification.

**¶{7}** The case was tried to a jury on June 26, 2008. Testimony was presented by the officers involved, the informant, a forensic scientist, and appellant's two co-defendants. Co-defendant Blackburn testified that he slept in the backseat while appellant drove to Detroit. (Tr. 108). He revealed that he provided $1,000 to appellant and was to receive approximately 14 grams of cocaine in return. (Tr. 110-111). Co-defendant Staudacher testified that he also "kicked in some money" to purchase the cocaine. (Tr. 150, 155).

**¶{8}** The jury found appellant guilty on both counts. They also found that he was a major drug offender. The jury found that the Acura and the BMW were subject to forfeiture but the Suburban was not.

**¶{9}** On July 10, 2008, the court sentenced appellant to a mandatory sentence of ten years on each count and an additional six-year sentence for the major drug offender specifications for a total of sixteen years in prison. The court ordered restitution in the amount of $5,600: $4,000 for the money provided to the informant by the police and $1,600 for the money paid to the informant for her services to the police

department. Although the Suburban was not subject to forfeiture, the court noted that execution may issue against such vehicle to fulfill the restitution order.

¶{10} Appellant filed a timely appeal, which resulted in case number 08JE20. On August 18, 2008, he filed a motion to reconsider through new counsel. On September 18, 2008, the trial court denied appellant's post-trial motion to the extent that it could be considered a post-conviction petition, also noting that there was no such thing as a motion to reconsider. See, also, Crim.R. 33(B) (new trial motion must be filed within fourteen days after verdict). Appellant filed a notice of appeal from that entry, resulting in case number 08JE29. His brief primarily raises issues in 08JE20; the brief only vaguely refers to racial concerns arising from the proceedings which resulted in 08JE29. We proceed to address the contents of the assignments of error.

ASSIGNMENT OF ERROR NUMBER ONE

¶{11} Appellant sets forth eight assignments of error, the first of which provides:

¶{12} "THE TRIAL COURT UNCONSTITUTIONALLY IMPOSED A SIX (6) YEAR ENHANCEMENT IN CORNELL JONES' SENTENCE."

¶{13} Appellant briefly raises various unrelated arguments regarding the six-year additional sentence imposed for the major drug offender specification. First, appellant contends that the additional six-year sentence cannot be imposed because a court cannot impose a sentence based upon facts not found by the jury, citing *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856.

¶{14} If a person traffics in or possesses 1,000 or more grams of cocaine, he is a major drug offender and the sentencing court shall impose as a mandatory prison term the maximum prison term prescribed for a felony of the first degree and may impose an additional mandatory prison term prescribed for a major drug offender under R.C. 2929.14(D)(3)(b). See R.C. 2925.03(C)(4)(g) (trafficking); R.C. 2925.11 (C)(4)(f) (possession); R.C. 2929.01(W) (defining major drug offender). According to R.C. 2929.14(D)(3)(b), after ascertaining if R.C. 2929.14(D)(3)(a) is applicable, the court may impose an additional prison term of one, two, three, four, five, six, seven, eight, nine, or ten years, if the court makes the findings set forth in R.C. 2929.14(D)(2)(a)(iv) and (v). These divisions provide:

¶{15} "(iv) The court finds that the prison terms imposed pursuant to division (D)(2)(a)(iii) of this section and, if applicable, division (D)(1) or (3) of this section are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.

¶{16} "(v) The court finds that the prison terms imposed pursuant to division (D)(2)(a)(iii) of this section and, if applicable, division (D)(1) or (3) of this section are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense." R.C. 2929.14(D)(2)(a)(iv) and (v).

¶{17} These two divisions are the same as those in the repeat violent offender specification sentencing provision in R.C. 2929.14(D)(2)(a). The *Foster* Court found that these two divisions require unconstitutional fact-finding. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, ¶75-78. 83 (previously contained in divisions (D)(2)(b)(i) and (ii)). However, rather than eliminating penalty enhancements for repeat violent specifications, *Foster* merely severed and excised these fact-finding divisions. Id at ¶88, 97-98. "*After the severance, judicial fact-finding is not required before imposition of additional penalties for repeat-violent-offender and major-drug-offender specifications.*" (Emphasis added). Id. at ¶ 99.

¶{18} The Supreme Court has recently reaffirmed that this type of penalty enhancement, even in the absence of divisions (D)(2)(a)(iv) and (v), still exists after the *Foster* severance. *State v. Hunter*, 123 Ohio St.3d 164, 2009-Ohio-4147, ¶27 (*Foster* excised the portion of the repeat violent offender statute that required judicial fact-finding), ¶35. This district has also explained that the factors in (D)(2)(a)(iv) and (v) need no longer be considered before enhancement. *State v. Davis*, 7th Dist. No. 08MA152, 2009-Ohio-5079 (a repeat violent offender case). See, also, *State v.*

*Adams*, 11th Dist. No.2006-L-114, 2007-Ohio-2434, ¶22-27 (a major drug offender case).

¶{19} Accordingly, the trial court was not required to make the findings declared unconstitutional in *Foster*. Thus, appellant was a major drug offender if he possessed or sold over 1,000 grams of cocaine. The jury found the existence of this specification. As such, no statutorily-required unconstitutional judicial fact-finding occurred in this case.

¶{20} Contrary to an alternative argument presented under this assignment of error, it is also not improper judicial fact-finding for the trial court to express its belief that appellant knew the name of his source and his buyers. This is merely the court using information gleaned at trial to make conclusions about appellant's knowledge, and a sentencing court is permitted to express its impressions derived from trial. See *State v. Simmons*, 7th Dist. No. 07JE22, 2008-Ohio-3337, ¶11-14 (it is statutorily-required specific judicial fact-finding that is prohibited, not the discretionary expression of the existence of various sentencing considerations).

¶{21} Appellant similarly complains that the court should not have asked him to disclose his source and his buyers at sentencing or offered to give him credit for providing names. (Sent. Tr. 21-24, 30-31). Although it may be preferable to refrain from acting as an inquisitor, the questioning here was not "cruel and unusual punishment" as appellant suggests.

¶{22} Moreover, appellant's refusal to provide names could be considered as tending toward a lack of genuine remorse, which is a proper sentencing factor. See R.C 2929.12(D)(5), (E)(5). See, also, *State v. Barger*, 2d Dist. No. 2006-Ohio-12, 2006-Ohio-5559, ¶26-27 (refusal to identify drug source is a sentencing factor). Although appellant felt it was too dangerous to provide names to show remorse due to the public nature of the sentencing hearing, his sentencing took place a week after the jury found him guilty, giving him time to provide names in private if he wished to do so as a gesture of remorse. On the topic of remorse, it should also be noted that appellant's allocution did contain an apology but seemed more concerned with recognizing certain spectators, seemingly reminding them that they owed him. (Sent. Tr. 20-21).

¶{23} Appellant next contends that the sentencing court ignored the mitigating evidence. To the contrary, the court recognized that this was a non-violent offense and that appellant was well-liked. See R.C. 2929.12(C)(3). However, the amount of drugs, being nearly twice the amount needed for a major drug offender specification, was a major factor for the court. See R.C. 2929.12(A) (any other factor the court finds relevant to achieving the purposes and principles of sentencing), (B) (any other factors making offender's conduct more serious than conduct usually constituting the offense). The court rationally surmised that it was unlikely that this was appellant's first involvement with trafficking because it was unrealistic to believe that a brand new trafficker could drive to Detroit after collecting $56,500 from various local financial sources and pick up nearly two kilograms of cocaine from a prearranged supplier. (Sent. Tr. 30). See R.C. 2929.12(D).

¶{24} The court noted how much money was involved for the purchase, how much would be made on the resale, and how little appellant had to do to make such a large amount of money. General and specific deterrence were strong considerations. (Sent. Tr. 29-30). See R.C. 2929.11(A). The court also focused on the fact that this offense was a result of organized criminal activity with appellant as the organizer. (Sent. Tr. 29). See R.C. 2929.12(B)(7).

¶{25} The court did not ignore the mitigating evidence. Rather, the court found the mitigating evidence was outweighed by the opposing evidence, which is the very function of the sentencing court. See R.C. 2929.11; R.C. 2929.12. It must also be remembered that the ten-year sentence was mandatory and that, on the additional sentence, the court could have, but did not, impose ten years on the major drug offender specification.

¶{26} Lastly, appellant complains that his sentence was not proportional to his codefendants' sentences. He points out that he is African-American and his codefendants are white. A felony sentence shall be consistent with sentences imposed for similar crimes committed by similar offenders. R.C. 2929.11(B). See, also, R.C. 2929.11(C) (a sentence shall not be based upon race). However, there is no requirement that codefendants receive the same sentence. *State v. Cardamone*,

8th Dist. No. 92235, 2009-Ohio-5361, ¶34, citing *State v. Hall*, 179 Ohio App.3d 727, 2008-Ohio-6228, ¶8 (10th Dist.).

**¶{27}** As for Staudacher's thirteen-year-sentence, there are a myriad of reasons distinguishing the culpability of Staudacher from that of appellant. It was appellant, not Staudacher, who negotiated the resale with the informant while police recorded the transaction. The informant provided $4,000 in police funds to appellant, not Staudacher. Appellant indicated that he was the one who knew the source in Detroit. Appellant organized the trip. He collected the funds in Steubenville. He was also the one who was to distribute the 5.5 ounces to the informant upon their return. Appellant seems to have contributed at least $12,000 to the purchase compared to the $4,000 which the state argued that Staudacher contributed.

**¶{28}** Moreover, appellant utilized his own vehicle to drive to Detroit. The drugs were found in what could reasonably be concluded was appellant's duffel bag. A ledger, showing the various contributions and said to be written by appellant, was found in appellant's wallet. Appellant voiced his intent to purchase two kilograms, whereas Staudacher believed they were only going to pick up one kilogram. (Tr. 150). Although Staudacher's criminal record was said to be more extensive than appellant's, appellant did have a prior drug offense. See R.C. 2929.12(D)(2)-(3). Finally, appellant did not admit his guilt and did not negotiate a plea, whereas Staudacher pled guilty and negotiated a plea requiring the state to recommend thirteen years in prison.

**¶{29}** As for codefendant Blackburn, he was sentenced to only two years. However, he contributed only $1,000 to the drug buy. Additionally, he admitted his guilt to the police, and he negotiated a plea with the state whereby he pled to one count of attempted complicity to drug trafficking. This offense is a second degree felony which is a lesser degree of offense than appellant was convicted of, and he was convicted of only one offense compared to appellant's two offenses. Moreover, Blackburn negotiated his plea so that the state was required to recommend this two-year sentence. The court merely imposed the sentence recommended by the state. As such, there is a plethora of evidence showing that appellant justifiably received a greater sentence than his codefendants, and there is no evidence that appellant received a greater sentence than Staudacher or Blackburn due to his race.

**¶{30}** Although some may believe that an additional six-year sentence after a mandatory ten-year sentence is unwarranted for a non-violent offender, the legislature has authorized such punishment, and it is for the trial court thereafter to use its long-standing discretion to fashion the proper sentence for each defendant. See R.C. 2929.12(A). We do not substitute our judgment for that of the trial court on such matters. In this case, the sentence is not contrary to law, and it does not appear that the court abused its discretion in weighing the sentencing factors. See *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912 (setting forth the standard of review in multiple opinions). See, also, *State v. Gratz*, 7th Dist. No. 08MA101, 2009-Ohio-695, ¶8; *State v. Gray*, 7th Dist. No. 07MA156, 2008-Ohio-6591, ¶17. For all of these reasons, this assignment of error is overruled.

ASSIGNMENT OF ERROR NUMBER TWO

**¶{31}** Appellant's second assignment of error provides:

**¶{32}** "THE TRIAL COURT COMMITTED PREJUDICL [SIC] ERROR WHEN IT IMPOSSED [SIC] A FINE ON INDIGENT APPELLANT AND/OR SEIZED THE SUBURBAN UNLESS MR. JONES' FAMILY PAID THE STATE RESTITUTION."

**¶{33}** First, we address appellant's argument that the court should not have ordered $5,600 in restitution because restitution is improper if the defendant is indigent. In general, restitution is a financial sanction available at sentencing. R.C. 2929.18(A). The test for imposing restitution is not indigency in general, but it is whether the offender is able to pay the financial sanction or is likely to be able to pay it in the future. See R.C. 2929.18(E). Thus, before imposing a financial sanction such as restitution, the court shall consider the offender's present and future ability to pay the amount of the sanction. R.C. 2929.19(B)(6), citing R.C. 2929.18.

**¶{34}** The court need not hold a separate hearing on the matter. See R.C. 2929.18(E). And, there is nothing in the statute requiring the court to set forth its consideration of ability to pay in the present or future. *State v. Gibson* (1998), 80 Ohio St.3d 626, 635. Thus, if there is some evidence on the record regarding ability or inability to pay, we can presume the sentencing court considered the topic. See *State v. Jones*, 7th Dist. No. 07CO46, 2009-Ohio-4392 (appellate court presumes consideration of sentencing factors from silent record), citing *State v. Kalish*, 120 Ohio

St.3d 23, 2008-Ohio-4912, ¶18, fn. 4; *State v. Cyrus* (1992), 63 Ohio St.3d 164, 165; *State v. Adams* (1988), 37 Ohio St.3d 295, 297.

¶{35} Regardless, there is not only evidence on the record here concerning appellant's ability or inability to pay, but the record demonstrates the court's consideration of appellant's present and future ability to pay $5,600 in restitution. That is, the court pointed out that appellant's Suburban, which the jury found not subject to forfeiture, could be executed upon to satisfy the judgment. (Sent. Tr. 31). In addition, the court heard arguments that appellant was indigent and that there were liens on his three vehicles. (Sent. Tr. 31-32). The court was informed that appellant had been employed as a disc jockey and in the service department of a car repair shop and that he provided a high level of customer satisfaction. (Sent. Tr. 11).

¶{36} The state set forth evidence that appellant contributed $12,000 cash to the drug buy. Although one could conclude that this utilized his available funds, one could also rationally believe that one would not contribute every available cent to finance this transaction. Furthermore, the court noted that appellant talked about hiring private counsel before trial. He also thought about doing so before sentencing. (Tr. 280). In fact, "potential retained counsel" introduced himself on the sentencing record, albeit stating that he believed his fee would mostly be paid by family. (Sent. Tr. 33).

¶{37} Most notably, the court waived the mandatory fine, which would have been at least $10,000 per offense. See R.C. 2929.18(A)(3)(a) ($20,000 maximum fine for first degree felony), (B)(1) (drug offense carries mandatory minimum fine of one-half the maximum). Thus, the court determined under R.C. 2929.18(B)(1) that appellant was indigent and unable to pay the mandatory fine. This shows that the court considered appellant's present and future ability in determining that he established that he could not pay a $10,000 mandatory fine plus a $5,600 restitution order but that he did have the ability to pay the $5,600 restitution order alone.

¶{38} As for contentions regarding unfairness to appellant's wife, these contentions were not raised below and cannot be considered as fact for purposes of appeal. Along with these contentions, appellant complains that the sentencing court cannot execute upon his Suburban to satisfy the restitution order without a further

hearing. R.C. 2929.18(D) states that after a restitution order, the interested party can bring an action to obtain execution of the judgment in various statutory ways including execution against property of the judgment debtor or attachment of the property of the judgment debtor (who is defined as the person against whom the restitution order is issued). R.C. 2929.18(D)(1), citing, e.g., Chapter 2329 and Chapter 2715.

¶{39} Thus, appellant's argument is technically correct: statutorily, the party to whom restitution is owed must bring an action to execute upon the judgment. However, here the court's order merely stated that "execution may issue against" his Suburban for the restitution order. The court did not actually order execution on the Suburban, which is a step the proper party would have to take next.

¶{40} There is, however, another issue with the restitution order. That is, there is no proper party to the restitution order. As will be analyzed below, the state was not a victim for purposes of the restitution order. Although appellant did not raise the issue below and does not raise it here, it is a problem worthy of application of the plain error doctrine.

¶{41} Pursuant to Crim.R. 52(B), plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. This rule allows the appellate court, at the request of appellate counsel or sua sponte, to consider certain unobjected to errors. *State v. Slagle* (1992), 65 Ohio St.3d 597, 604. Plain error can be recognized to prevent a manifest miscarriage of justice where, but for the error, the outcome of the proceeding clearly would have been otherwise. *State v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3547, ¶61.

¶{42} The Eleventh District has applied the plain error doctrine to raise this specific restitution issue sua sponte. *State v. Pietrangelo*, 11th Dist. No. 2003-L-125, 2005-Ohio-1686. The Fourth District has used plain error to address this specific restitution issue where it had been raised on appeal but had not been raised below. *State v. Samuels*, 4th Dist. No. 03CA8, 2003-Ohio-6106, ¶9.

¶{43} Pursuant to statute, the court can impose restitution against the offender payable to the victim of the offender's crime or any survivor of the victim in an amount based on the victim's economic loss. R.C. 2929.18(A)(1) (also reiterating that such amount shall not exceed the amount of economic loss suffered by the victim as a

direct and proximate result of the commission of the offense). The Fourth and Eleventh Districts defined "victim" as used in this statute as a person or entity that was "the object" of the crime. *Pietrangelo*, 11th Dist. No. 2003-L-125 at ¶15; *Samuels*, 4th Dist. No. 03CA8 at ¶5, citing Black's Law Dict. (5th Ed. 1979) 1405.

¶{44} Thus, the government or a police department can be a victim if, for instance, they suffer vandalism or embezzlement at the hands of the offender. *Pietrangelo*, 11th Dist. No. 2003-L-125 at ¶15; *Samuels*, 4th Dist. No. 03CA48 at ¶5. However, the government or a police department is not a victim merely because they expended funds in order to gather evidence against the offender. Id. The Fourth and Eleventh Districts have thus ruled that R.C. 2929.18(A) does not contemplate restitution for the voluntary advancement of funds to pursue a drug buy. Id.

¶{45} The Eleventh District pointed out that many federal courts have held that the government agencies using their funds to purchase drugs are not "victims" as contemplated by the federal statute on restitution. *Pietrangelo*, 11th Dist. No. 2003-L-125 at ¶16, citing *United States v. Cottman* (C.A.3, 1998), 142 F.3d 160, 168; *United States v. Khawaja* (C.A.11, 1997), 118 F.3d 1454; *United States v. Meacham* (C.A.6, 1994), 27 F.3d 214, 218-219; *United States v. Gibbens* (C.A.1, 1994), 25 F.3d 28, 32-33; *Gall v. United States* (C.A.6, 1994), 21 F.3d 107, 108.

¶{46} The Eleventh District also pointed out that the majority of state courts addressing this particular issue "have likewise concluded that the government is not a victim entitled to restitution where public moneys are expended in pursuit of solving crimes, as these expenditures represent normal operating costs." *Pietrangelo*, 11th Dist. No. 2003-L-125 at ¶17, quoting *State v. Sequiera* (Haw.App. 2000), 93 Haw. 34, 995 P.2d 335, 344-345 (listing California, Illinois, Minnesota, Nevada, New Jersey, New York, and Wisconsin among the states following this rule).

¶{47} In addition, the Third District has followed *Pietrangelo* and *Samuels* to find that the government is not a victim under the restitution statute merely because it expended funds in some manner as a result of the defendant's offense. See, e.g., *State v. Ham*, 3d Dist. No. 16-09-01, 2009-Ohio-3822, 3822 ¶48-49 (cannot order restitution of costs incurred by humane society to care for defendant's dog); *State v. Wolf*, 176 Ohio App.3d 165, 2008-Ohio1483, ¶40-41 (fire departments are not victims

of the arson and cannot seek restitution for firefighting); *State v. Toler*, 173 Ohio App.3d 335, 2007-Ohio-6967, ¶11-12 (cannot order restitution of extradition costs incurred by sheriff's department).

¶{48} Finally, we note that R.C. 2929.18(A)(5) provides for *reimbursement* to the government for the costs of *sanctions*. The existence of this provision shows the statutory distinction between restitution to victims and reimbursement to the government for certain listed expenses. For these reasons, we hereby vacate the restitution order.

<u>ASSIGNMENT OF ERROR NUMBER THREE</u>

¶{49} Appellant's third assignment of error alleges:

¶{50} "THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN DENYING APPELLANT A CONTINUANCE OR RECESS TO DEVELOP ISSUES RELATED TO DEVELOP ISSUES [SIC] AND LATER TO DECIDE WHETHER TO TKE [SIC] THE STAND IN HIS OWN DEFENSE."

¶{51} Appellant complains that he was twice denied a continuance resulting in prejudicial error. The grant or denial of a continuance is a matter that is entrusted to the sound discretion of the trial court. *State v. Unger* (1981), 67 Ohio St.2d 65, 67. Thus, an appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion. Id. There is no mechanical test for evaluating the exercise of this discretion. Id. However, some of the factors to consider include: the length of the delay requested; other continuances requested and received; the inconvenience to litigants, witnesses, opposing counsel, and the court; whether the requested delay is for legitimate reasons or a delaying tactic; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case. Id. at 67-68.

¶{52} First, appellant states in a nebulous one-sentence argument that he should have been granted a continuance of the suppression hearing because defense counsel had learned that a motion to suppress had been filed, three days before, in a case pending against appellant in West Virginia. At the suppression hearing, defense counsel stated that appellant just advised him five minutes before that the West Virginia suppression motion asked "to suppress one of the triggering actions that

started this case." Counsel also advised that appellant "believes that it's unfair for him to not be tried in chronological order. That is to say since the West Virginia offense occurred prior to this offense he thinks in fairness he ought to face trial in the West Virginia offense before he faces his trial here." (Supp. Tr. 3).

¶{53} The judge reminded counsel that he was only presiding over the suppression hearing (due to procedure of having a different court hear suppression than the one that issued the warrant in cases where the motion contests probable cause to issue the warrant). The judge advised that appellant would have to address any requests for continuances to the judge assigned to the case. (Supp. Tr. 3-5). The suppression judge allowed a fifteen-minute recess to discuss the matter with the prosecutor or the judge assigned to the case. (Supp. Tr. 5). It was reasonable for the suppression judge to defer to the judge assigned to the case.

¶{54} However, there is no indication that the matter was actually presented to the judge assigned to the case. The suppression transcript does not evidence whether they actually appeared before the judge assigned to the case or whether that judge actually denied a continuance. Similarly, the docket shows that no motion for continuance of the suppression hearing was filed or ruled upon.

¶{55} In any event, it was unreasonable for appellant to tell his attorney five minutes before a suppression hearing that he wished to continue the matter or that he filed a suppression motion in his other case three days ago. Moreover, there is no indication how the evidence sought to be suppressed in West Virginia relates to the evidence sought to be suppressed in the case at bar. Finally, appellant has not established that he was prejudiced. For instance, there is no indication that his West Virginia suppression motion was successful, which was the entire reason for him seeking this continuance.

¶{56} The second issue raised under this assignment of error is the trial court's refusal to recess at 4:10 p.m. on the first day of trial so that the defendant had more than a few minutes to consult with family members and advisors about whether he wanted to testify. The court noted that appellant had months to decide if he wanted to testify. The court then stated that appellant could have a few minutes to make his

decision. (Tr. 228). Appellant did not thereafter testify. Closing arguments and jury instructions were presented, and the jury returned a verdict at 5:44 p.m.

¶{57} Initially, we note that appellant had been granted a continuance of more than a month once before. See *Unger*, 67 Ohio St.2d at 67-68. As the court pointed out, the decision whether to testify should have been considered throughout the months preceding trial and throughout the hours of trial itself. The evidence was not complex. Nothing was said to be surprising. A brief recess to confer with counsel and other advisors could rationally be considered sufficient.

¶{58} In addition, appellant was twenty minutes late to court that morning. (Tr. 6). He was out on bail pending trial. His need for another night to decide whether to testify could be viewed as a delaying tactic. The state was opposed to the continuance. (Tr. 228). The trial ended up finishing that evening. A delay until the next morning could be seen as inconveniencing the court, the prosecutor, the rebuttal witnesses, and the jurors. See *Unger*, 67 Ohio St.2d at 67-68.

¶{59} There are no unique facts making an overnight continuance necessary or reasonable merely to decide whether one wishes to testify in one's own defense. As such, the court did not abuse its discretion in granting a brief recess rather than an overnight continuance. This assignment of error is overruled.

### ASSIGNMENT OF ERROR NUMBER FOUR

¶{60} Appellant's fourth assignment of error provides:

¶{61} "APPELLANT WAS DENIED A FAIR TRIAL BY EXCLUSION OF JURORS IN HIS CASE AND GENERALLY ON THE BASIS OF RACE."

¶{62} When three venire persons stated that they heard or read about the case in the news, they were asked whether they were willing to set aside this information and judge the case solely on the evidence. (Tr. 14-15). The only African-American venire person answered, "I know the defendant, so." The state queried, "Would that make it difficult for you to sit in judgment of him today?" to which this potential juror responded, "It would make it difficult for me to send him to jail." (Tr. 15). The potential juror also answered affirmatively when the state asked if it was fair to say that she might be a better juror for a different case than the one involving appellant.

¶{63} The court anticipated objections regarding this juror sitting on the panel and asked for comments. Defense counsel opined that the state should be required to state a race-neutral reason for excusing this potential juror. (Tr. 16). The state pointed out that the juror looked uncomfortable, that she knew the defendant, and that she revealed that it would be difficult to sit in judgment of him. (Tr. 16-17). The court then excused the juror. (Tr. 17).

¶{64} Appellant now argues that the court's dismissal of the only African-American for cause denied him a fair trial. He states that cause was not manifest and asks us to compare her statements with that of the white panel members.

¶{65} Pursuant to Crim.R. 24(C), a person called as a juror may be challenged for the following causes:

¶{66} "(9) That the juror is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that the juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial. * * *

¶{67} "(14) That the juror is otherwise unsuitable for any other cause to serve as a juror."

¶{68} Statutorily, good cause for challenging any person called as a juror includes the situation where "he discloses by his answers that he cannot be a fair and impartial juror or will not follow the law as given to him by the court." R.C. 2313.42(J). "A trial court's ruling on a challenge for cause will not be disturbed on appeal unless it is manifestly arbitrary and unsupported by substantial testimony, so as to constitute an abuse of discretion." *State v. Williams* (1997), 79 Ohio St.3d 1, 8.

¶{69} Here, the potential juror's answers established that she was biased in favor of appellant, and the court was not satisfied that she could render an impartial verdict. She essentially answered the question about whether she could decide the case on the evidence by stating that she cannot because she knows appellant. She agreed that it would be difficult to sit in judgment of appellant due to this knowledge of

him. She admitted that she was unsuitable for these reasons to serve as a juror in this case.

¶{70} The trial court occupied the best position to view the demeanor, gestures, and voice inflection of this venire person and to judge her level of bias and her certainty and credibility as to her expression of bias. Id. Under these circumstances, knowing a defendant and expressing that it would be difficult to render judgment against him is sufficient evidence for a court to exercise its discretion to excuse the juror for cause. See *State v. Sheppard* (1998), 84 Ohio St.3d 230, 235 (where potential juror was acquainted with victim and had seen the defendant around but says he can be impartial, the denial of challenge for cause was upheld based upon deference to the trial court, but the Supreme Court stated, "caution suggests sustaining the challenge").

¶{71} In any event, the state only exercised one out of its four peremptory challenges. (Tr. 31, 33, 42, 47-48). Thus, had the court denied the challenge for cause, the state most certainly would have utilized a peremptory challenge. Since the state already put race-neutral reasons on the record and there was no indication that the reason was pretextual, the challenge would have withstood a *Batson* challenge as well. See *Batson v. Kentucky* (1986), 476 U.S. 79, 96-98 (race-neutral reason need not rise to level of challenge for cause). See, also, *State v. Davis*, 7th Dist. No. 08MA152, 2009-Ohio-5079, ¶53-58 (peremptory challenge of African-American upheld where prosecutor did not approve of juror's past expressions of authority and where prosecutor disbelieved the juror's statement that he knew nothing of the defendant's car and foot chase which took place near the juror's house).

¶{72} Finally, we must point out that the African-American venire person was not treated differently than the white jurors who expressed that they could not be impartial. Most notably, one of the other potential jurors who had heard about the case in the news stated that he knew the detective. (Tr. 14-15, 20). When asked if this would keep him from basing his decision on the evidence, he stated that it would because the detective assisted him by conducting a "gun bust" at one of his properties and also noted that he would probably say the defendant was guilty because he was

victimized in the past. (Tr. 10). *The defense* successfully asked that this venire person be excused for cause. (Tr. 21).

¶{73} Similarly, when asked whether she would have a problem listening to the evidence due to personal experience, another potential juror answered that she would want to convict appellant and stated that she did not know if she could lay her feelings aside. (Tr. 23-24). Once again, *the defense* successfully challenged this potential juror for cause. (Tr. 24).

¶{74} Thus, the court treated the white venire persons the same as the similarly situated African-American venire person. No differential treatment due to race is evident. In accordance, this assignment of error is overruled.

ASSIGNMENT OF ERROR NUMBER FIVE

¶{75} Appellant's fifth assignment of error states:

¶{76} "TESTIMONY REGARDING THE IDENTITY OF THE HANDWRITING ON THE ALLEGED LEDGER WAS WITHOUT ROPER [SIC] FOUNDATION AND NOT ADMISSIBLE."

¶{77} The informant testified that she was originally going to ride to Detroit with appellant until the trip got postponed, after which she provided appellant with $4,000 to purchase 5.5 ounces of cocaine for her to resell. (Tr. 80). She advised that she had known appellant since 1999. (Tr. 75). She had a romantic relationship with him in the past. (Tr. 97-98). Their most recent relationship was a friendship. She was also storing a truck for appellant. (Tr. 101). She said his nickname is Third (presumably short for Cornell Jones, III). (Tr. 76).

¶{78} The informant was presented with a document labeled State's Exhibit Number Two and was asked if she could identify the handwriting on that document, which was later characterized as appellant's ledger (as it contained monetary amounts labeled with names). The informant responded, "It looks like Third's." (Tr. 102). As the evidence bag had blue lines and preprinted writing all over the front of it, the state asked that the document be removed from the bag so she could view the other side. (Tr. 102-103). After this was done, the state asked if she could identify the handwriting to which she responded, "Third's." (Tr. 103).

**¶{79}** The defense did not object. Instead, defense counsel cross-examined her on the matter. She disclosed that the police showed her the document after appellant's arrest, told her they found it in his wallet, and asked her to decipher the names written on it. When asked if appellant wrote her letters, she answered that he had. (Tr. 104). She was also asked whether she was a certified documents examiner. (Tr. 104-105).

**¶{80}** On redirect, she again stated that appellant has written her letters in the past. She agreed that this past exposure to his writing was the source of her handwriting identification. (Tr. 105).

**¶{81}** On appeal, appellant complains that the informant was not an expert at handwriting analysis and that the familiarity exception is not applicable because the foundation laid was insufficient. Appellant states that the informant's testimony about previously viewing appellant's writing was vague and non-specific.

**¶{82}** If a witness is not testifying as an expert, testimony in the form of opinions or inferences is limited to that which is: (1) rationally based on the witness's perception, and (2) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. Evid.R. 701. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Evid.R. 901(A). An example of authentication or identification under the rule is a non-expert opinion as to the genuineness of handwriting based upon familiarity not acquired for purposes of the litigation. Evid.R. 901(B)(2).

**¶{83}** As appellant failed to object to the informant's identification testimony, any error is waived. See Evid.R. 103(A)(1) (error may not be predicated upon a ruling which admits evidence unless a substantial right of the party is affected, and a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context). Due to this waiver, we can review the claimed lack of foundation only for plain error. *State v. Allen* (1995), 73 Ohio St.3d 626, 635 (claim that various items were not properly authenticated was waived absent plain error). Plain error can be recognized to prevent a manifest miscarriage of justice where, but for an error affecting substantial rights, the outcome

of the proceeding clearly would have been otherwise. *State v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3545, ¶61. See, also, Crim.R. 52(B).

¶{84} We first note that even if an objection had been made at the appropriate time, the state would have had the opportunity to provide a more thorough foundation after the objection. See *State v. Brazzon*, 11th Dist. No. 2001-T-0050, 2003-Ohio-6080, ¶43 (if evidence is not inherently inadmissible, then there is no plain error as the state may have laid a foundation upon proper objection); *State v. Collier* (July 27, 2000), 8th Dist. No. 76433. A substantial right is not affected if an error is cured. See Evid.R. 103(A)(1). Thus, we need not be concerned with any complaint that some of the foundational elements for the informant's handwriting identification may not have been placed on the record until after she had already identified the handwriting as belonging to appellant. Defense counsel was likely aware of the state's ability to lay a further foundation immediately after an objection, and thus, may have strategically decided to cross-examine on her familiarity with appellant's handwriting, at which point he would have discovered that a motion to strike was not warranted.

¶{85} Here, the informant's testimony was rationally based on her perception and helpful to a determination of a fact in issue. See Evid.R. 701. Her knowledge was not acquired for purposes of litigation. See Evid.R. 901(B)(2). She stated that she knew appellant for eight years, first as a romantic interest and then as friends. She provided him with $4,000 and had plans to drive to Detroit with him. She was storing a vehicle for him at the time of trial. With this history in mind, the receipt of letters from appellant was a significant authentication factor. His past letters to her were also specifically said to be the source of her knowledge concerning what appellant's writing looked like.

¶{86} Thus, she had first-hand knowledge of appellant's handwriting. See *State v. Shakoor*, 7th Dist. No. 01CA121, 2003-Ohio-5140, ¶80-82. There is nothing requiring the state to specifically use or elicit the word "familiar" or "familiarity" in order to establish authenticity under Evid.R. 902. Testimony that one has received letters from a boyfriend in the past and that this is the source of handwriting identification, combined with the actual identification of handwriting on the document as belonging to

appellant, can all be construed as an expression of familiarity with appellant's handwriting.

¶{87} Finally, there was ample evidence of appellant's guilt here. See *Allen*, 73 Ohio St.3d at 635. There were recorded conversations. The informant and the codefendants testified. Plenty of evidence showed that appellant organized the trip and gathered the money. Most notably, appellant was stopped with nearly two kilograms of cocaine hidden in a duffel bag in his trunk.

¶{88} Under the totality of the facts and circumstances here, there is no obvious error resulting in a manifest miscarriage of justice. As such, the informant's testimony identifying appellant's handwriting on the ledger is not error, plain or otherwise.

ASSIGNMENT OF ERROR NUMBER SIX

¶{89} Appellant's sixth assignment of error alleges:

¶{90} "THE STATE IMPROPERLY SHIFTED THE BURDEN OF PROOF ON A CERTRAL [SIC] ISSUE IN APPELLANT[']S THEORY OF INNOCENCE."

¶{91} Appellant argues that the state attempted to shift the burden of proof to the defense and thus engaged in prosecutorial misconduct by stating the following in closing arguments:

¶{92} "And then we come back again to this idea about the handwriting analysis. Do you know who else could have called witnesses today? Mr. Jones. Mr. Jones had subpoena powers. Mr. Jones has the power to bring his own witnesses into this courtroom. If Mr. Jones thought for one second that that ledger wasn't in his handwriting, do you know who could have brought you an expert today?"

¶{93} At that point, the defense objected, and an off-the-record discussion was held. (Tr. 248). The state then continued:

¶{94} "What will be pointed out to you in the instructions is that he doesn't have to call witnesses, that the burden is on the State to prove that he's guilty and I think we've met that burden but he can call witnesses. He could have brought you -- if he thought it would work, he could have brought you his own handwriting analysis and say 'Hey, that's not the handwriting of Cornell Jones III' but he didn't and so even though the burden is on the State, what you['re] left to wonder in part is why not

because you know exactly what that would have shown, exactly what makes sense with the rest of this case, that the ledger that was in his wallet, in his trunk, next to his gym bag, next to the dope is his." (Tr. 249).

¶{95} In general, the prosecutor is entitled to a certain degree of latitude during closing arguments. *State v. Liberatore* (1982), 69 Ohio St.2d 583, 589. In reviewing a claim of prosecutorial misconduct in closing arguments, we determine whether the remarks were improper and if so whether they prejudicially affected substantial rights of the defendant. *State v. Smith* (1984), 14 Ohio St.3d 13, 14.

¶{96} Comments are not prejudicial or erroneous where the defense invited or opened the door to the comments. See *State v. Brown* (1988), 38 Ohio St.3d 305, 316-317. Here, the contested statements were made in the state's *rebuttal*. The state was specifically responding to the following statements in the defense's closing argument:

¶{97} "They can't even bother to take that little extra step and send it [the ledger] to a certified documents examiner? The BCI agent says 'Yeah, we have those guys, they're in another facility but we have them.' And how -- how big of a burden would that be to take one little extra step of effort to make sure that you weren't going to deny an innocent man of his freedom? A couple extra days investigation? I mean, the case is only 6-1/2 months old. Cases go on for years while they're investigated.

¶{98} "So, I think that that is not something to be shrugged off. That is a major deficiency in this case * * * Has the prosecution in this case given us the greatest amount of certainty that they could have offered us? No. There's no handwriting exemplar. Anybody could have made that list. Nobody saw my client write it. * * * That would be such an easy thing to do to give us the certainty to make us comfortable that we weren't depriving a potentially innocent man of his freedom." (Tr. 241-242).

¶{99} The state's rebuttal was a rational response to this closing. Thus, the defense opened the door to and invited the state's comment that the defense could have conducted a handwriting analysis as well. See *Brown*, 38 Ohio St.3d at 316-317.

¶{100} In any event, the state may comment upon the defendant's failure to present evidence. *State v. Clemons* (1998), 82 Ohio St.3d 438, 452, citing *State v. Williams* (1986), 23 Ohio St.3d 16, 19-20; *State v. Bies* (1996), 74 Ohio St.3d 320,

326. Thus, commenting that a witness, other than the accused, did not testify is not improper. *Clemons*, 82 Ohio St.3d at 452, citing *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 193 (where the state asked the defendant why he did not call his girlfriend to support his testimony). Specifically, the state can comment that the defense did not call an expert to testify. *Clemons*, 82 Ohio St.3d at 452 (the state can comment that a defendant could have called an expert to establish that he blacked out). For these reasons, this assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NUMBER SEVEN</u>

¶{101} Appellant's seventh assignment of error urges:

¶{102} "APPELLANT SUFFERED SUBSTANTIAL PREJUDICE AS A RESULT OF INEFFECTIVE ASSISTANCE OF COUNSEL."

¶{103} In seeking reversal for alleged ineffective assistance of trial counsel, the defendant must establish deficient performance which caused prejudice to the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 687; *State v. Bradley* (1989), 42 Ohio St.3d 136, 142. We thus apply a two-pronged test: deficiency and prejudice.

¶{104} In order to establish that counsel's performance was deficient, the defendant must demonstrate that the performance fell below an objective standard of reasonable representation. *State v. Keith* (1997), 79 Ohio St.3d 514, 534. Counsel is presumed competent. *State v. Thompson* (1987), 33 Ohio St.3d 1, 10. We do not use hindsight to second-guess trial tactics as there is a wide range of professional competence and of acceptable trial strategy. *State v. Carter* (1995), 72 Ohio St.3d 545, 558.

¶{105} To then demonstrate that he was prejudiced by the deficient performance, the defendant must prove that there exists a reasonable probability that were it not for counsel's serious error, the outcome of the proceedings would have been different. *Keith*, 79 Ohio St.3d at 534. In evaluating prejudice, we thus consider whether our confidence in the outcome is undermined. *Bradley*, 42 Ohio St.3d at 142.

¶{106} Appellant alleges three instances of ineffective assistance of counsel. First, he complains about defense counsel's handling of the testimony presented by the state's forensic expert from the BCI laboratory. This expert testified that he analyzed the substance within the two packages discovered in appellant's trunk. He

explained that he weighed the substance and then performed a presumptive chemical test and a microcrystalline test to ensure the presence of cocaine. (Tr. 127-128). He then used a gas chromatograph mass spectrometer to test that the substance did not contain separate components. (Tr. 128-129). He also used FTIR instrumentation to check his results. (Tr. 129).

¶{107} He concluded that due to his twenty-five years of experience at BCI and the results of the four tests, "I can tell you State's Exhibit 3, items 1 and 2, are cocaine." (Tr. 129). He was then asked if he is able to testify what each package weighs. He answered affirmatively and went on to testify that item 1 weighed 984 grams and item two weighed 1,000 grams. (Tr. 130-132). Finally, the expert answered affirmatively when the prosecutor asked:

¶{108} "And based upon your years of experience, your education and your training are you confident in your findings that those packages are respectively 984 grams of cocaine and 1,000 grams of cocaine?" (Tr. 132).

¶{109} On cross-examination, defense counsel asked about his error rate, and the expert disclosed that in twenty-five years at BCI, he has never "missed doing a chemical test" and noted that they conduct random retesting by different chemists and also by an outside agency. (Tr. 133). After the expert's testimony, the state moved to admit the related exhibits. The court asked if there was any objection, to which defense counsel responded out of the hearing of the jury:

¶{110} "I'm going to object to the introduction because I didn't hear the prosecutor ask him if his findings were to a reasonable degree of scientific certainty which I think is the standard for expert witnesses in the case like this, at least that's the custom and practice I've always dealt with. You know, that's -- that's my view but there are certain magic words for expert witnesses and in this case it's reasonable degree of scientific certainty." (Tr. 140).

¶{111} The court then had its probation officer run after the expert to return him to the stand. (Tr. 140-141). At that point, the prosecutor asked the expert:

¶{112} "I believe this was clear before but we want to make absolutely sure, are you able to state with a reasonable degree of scientific certainty that your findings as to item 1 contained 984 grams of cocaine?"

¶{113} The expert answered affirmatively to this question and an identical question regarding item 2 containing 1,000 grams of cocaine. (Tr. 141). The court then asked if defense counsel still had objections to the exhibits, and defense counsel stated that he did not and that he was withdrawing his earlier objection. (Tr. 142).

¶{114} Appellant initially claims that counsel failed to put his objection on the record at the side bar and complains that counsel tipped off the state that they should chase down the expert to ensure that he testified to a reasonable degree of scientific certainty. He cites only the following out-of-context statements made before the expert was recalled to the stand:

¶{115} "[Defense counsel]: I'm sorry.

¶{116} "[Prosecutor]: No, no. That's okay.

¶{117} "THE COURT: You're doing you job. That's what we want." (Tr. 141).

¶{118} However, it seems appellant skipped past page 140 of the transcript. As set forth above, counsel did object on the record, and the specific reasons for the objection were recorded as well. (Tr. 140). Contrary to appellant's suggestion, counsel did not secretly prompt the prosecutor or the court to call the witness back in order to "sabotage" his client. Rather, counsel properly voiced an objection, and the court made its own decision to have a probation officer run after the expert to have him place the "magic words" on the record.

¶{119} Appellant next states that counsel should have objected to the court's decision to allow the expert to be recalled. First, we note that the initial language used by the expert here is distinguishable from that reviewed in the *Holt* and *Shumaker* cases cited by appellant. That is, in *Holt*, the Supreme Court stated that probability, not possibility, is required of an expert witness, noting that "likely" is weaker than "reasonable certainty" or "probability." *State v. Holt* (1969), 17 Ohio St.2d 81, 85-85. In *Shumaker*, the Court again stated that proof of possibility is not sufficient and that probability is required. *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 46, fn.3. In any event, *Holt* is not precisely followed. See *State v. D'Ambrosia* (1993), 67 Ohio St.3d 185, 191 ("possibility" permissible); *State v. Bender* (1988), 40 Ohio St.3d 301, 313 (questioning *Holt* and holding that "more than likely" and "extremely likely" are permissible expressions).

¶{120} Here, the expert testified on initial direct examination that the packages contained cocaine. He expressed that he was "confident" based upon the four tests and his education, training, and twenty-five years of experience that the substance was cocaine. (Tr. 129, 132). This is more than expressing a possibility and is even more than expressing a probability. See *State v. Jackson* (2001), 92 Ohio St.3d 436, 448 ("reasonable certainty" is synonymous with "probability")

¶{121} Regardless, recalling a witness who had just stepped off the stand is a procedure best left to the trial court's sound discretion. See Evid.R. 611(A) (the trial court can exercise reasonable control over the mode and order of interrogation to effectively ascertain the truth); *In the Matter of L.M.S.*, 6th Dist. No. H-06-037, 2008-Ohio-360, ¶9-10 (it was proper to recall a medical witness to add that the opinion was made within a reasonable degree of medical certainty); *State v. Burneson*, 5th Dist. No. 2008-CA-00076, 2008-Ohio-5888, ¶30-36 (it is within the court's discretion to recall a witness to provide testimony which through error, mistake, or oversight, was not elicited); *State v. Burneson*, 8th Dist. No. 88767, 2007-Ohio-4037, ¶8. See, also, *State v. Spirko* (1991), 59 Ohio St.3d 1, 28 (applying Evid.R. 611(A) to hold that the refusal to grant the defense's request to recall a witness is within sound discretion of the trial court).

¶{122} Here, the expert stated he was confident based upon his experience, education, training, error rate, and testing. The expert was apparently still in the building, and the state had not yet rested its case. Thus, the court cannot be construed as having abused its discretion to control the mode and order of interrogation to effectively ascertain the truth. As such, the failure to object to the court's recalling of the state's expert was not erroneous or prejudicial.

¶{123} We move to appellant's next allegation of ineffective assistance of counsel. Before trial, counsel filed a motion to suppress physical evidence, alleging that the warrant was issued without probable cause. This motion was heard and overruled. At trial, a patrolman executing the search warrant on appellant's vehicle testified that appellant asked him what time the warrant was issued. He advised appellant that the judge signed it at 12:15 a.m. Appellant then advised the officer that

they had not yet arrived at their destination at the time the warrant had been issued. (Tr. 166).

¶{124} Appellant now contends that counsel was ineffective by failing to seek pretrial suppression of this statement on Fifth Amendment and *Miranda* grounds. However, the failure to file a motion to suppress can only constitute ineffective assistance of counsel for purposes of the direct appeal when the record demonstrates that the motion was warranted. See *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, ¶208; *State v. Barnette*, 7th Dist. No. 06JE23, 2008-Ohio-1546, ¶31.

¶{125} Here, there is no evidence of coercion on the record. See *State v. Ishmail* (1976), 54 Ohio St.2d 402, 406 (reviewing court can only consider matter on the record). In fact, the officer merely answered a question of fact put forth by appellant to which appellant chose to offer the information that he had not reached his destination at the time the warrant was signed. There is absolutely no indication that an interrogation occurred for purposes of *Miranda*. See *Rhode Island v. Innis* (1980), 446 U.S. 291, 300-301 (*Miranda* is applicable only when the officer elicited the statement during interrogation by express questioning or its functional equivalent). See, also, *State v. Tucker* (1998), 81 Ohio St.3d 431, 436.

¶{126} Moreover, even if suppression was likely (which it was not shown to be), there is no prejudice for purposes of the ineffective assistance of counsel test unless the defendant establishes a reasonable probability that he would not have been found guilty in the absence of the contested evidence. *State v. Madrigal* (2000), 87 Ohio St.3d 378, 389. Here, appellant's statement was not a main factor in his guilt. Rather, the testimony of the officers, the informant, and the codefendants and the discovery of cocaine and the ledger constituted overwhelming evidence against appellant. As such, this argument is without merit.

¶{127} Lastly, appellant complains that defense counsel did not inquire as to whether codefendant Blackburn's confession was freely given to police. Blackburn admitted his role and pled guilty. He testified at appellant's trial that he provided $1,000 to appellant toward the purchase of cocaine. (Tr. 110-111). On cross-examination, defense counsel did attempt to discredit his confession by asking if he initially claimed that he did not provide any money to appellant. (Tr. 114). He insisted

that his trial testimony was true, and did not indicate that it or his confession were involuntary.  Since there is no indication of coercion regarding this codefendant on the record, error and prejudice cannot be established here.  *Ishmail*, 54 Ohio St.2d at 406.  See, also, *Drummond*, 111 Ohio St.3d 14 at ¶208.  This assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER EIGHT

¶{128} Appellant's eighth assignment of error concludes:

¶{129} "THE CASE SHOULD BE REMANDED FOR A NEW TRIAL UNDER THE CUMULATIVE ERROR DOCTRINE."

¶{130} Under the doctrine of cumulative error, a conviction can be reversed when the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of the errors does not individually constitute cause for reversal.  *State v. Garner* (1995), 74 Ohio St.3d 49, 64.  This doctrine is inapplicable when the defendant fails to establish multiple instances of harmless error.  Id.

¶{131} Here, we did not find multiple instances of harmless error.  Even if appellant had established the existence of more than one harmless error at trial, we fail to discern any cumulative effect that would have deprived appellant of his right to a fair trial.  There is no right to a perfect trial.  This assignment of error is overruled.

¶{132} For the foregoing reasons, the judgment of the trial court regarding appellant's conviction and sentence are hereby affirmed.  However, the restitution order is vacated.

Donofrio, J., concurs.
Waite, J., concurs.