[Cite as *State v. Hewitt*, 2015-Ohio-5489.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 2015-CA-5 |
| | : | |
| v. | : | Trial Court Case No. 2014-CR-382 |
| | : | |
| HUSTON W. HEWITT | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 30th day of December, 2015.

. . . . . . . . . .

PAUL M. WATKINS, Atty. Reg. No. 0090868, Assistant Miami County Prosecuting Attorney, 201 West Main Street, Troy, Ohio 45373
      Attorney for Plaintiff-Appellee

ANDREW C. SCHLUETER, Atty. Reg. No. 0086701, 5540 Far Hills Avenue, Suite 202, Dayton, Ohio 45429
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Huston W. Hewitt, appeals from the sentence he received in the Miami County Court of Common Pleas after he was found guilty of possessing cocaine following a no contest plea. For the reasons outlined below, the judgment of the trial court will be affirmed.

## Facts and Course of Proceedings

{¶ 2} On August 25, 2014, Hewitt was arraigned in the Miami County Municipal Court for possessing cocaine. His case was then bound over to the Miami County Court of Common Pleas. Thereafter, on October 22, 2014, a bill of information was filed charging Hewitt with one count of possessing cocaine in an amount less than five grams in violation of R.C. 2925.11(A) and (C)(4)(a), a felony of the fifth degree. The charge arose after an officer discovered cocaine in Hewitt's vehicle following a traffic stop.

{¶ 3} Hewitt initially pled not guilty to the possession charge. However, as part of a plea agreement, Hewitt later agreed to plead no contest in exchange for the State remaining silent at sentencing. Accordingly, the trial court held a change of plea hearing on January 12, 2015, during which Hewitt entered a plea of no contest. After entering his plea, the trial court found Hewitt guilty of possessing cocaine and scheduled a sentencing hearing for February 18, 2015.

{¶ 4} At Hewitt's sentencing hearing, the trial court imposed a ten-month prison sentence and suspended Hewitt's driver's license for six months. The trial court also

ordered Hewitt to pay court costs and restitution to the Piqua Police Department in the amount of $125 for the cost of having the cocaine tested by the Miami Valley Regional Crime Lab (MVRCL).

{¶ 5} Hewitt now appeals from his sentence, raising two assignments of error for review. For purposes of clarity, we will address Hewitt's assignments of error out of order.

**Second Assignment of Error**

{¶ 6} Hewitt's Second Assignment of Error is as follows:

THE TRIAL COURT ERRED IN ORDERING APPELLANT TO PAY RESTITUTION TO A LAW ENFORCEMENT AGENCY WITHOUT HIS CONSENT.

{¶ 7} Under his Second Assignment of Error, Hewitt contends the trial court erred in ordering him to pay $125 in restitution to the Piqua Police Department for the cost of testing the drugs found inside his vehicle. Although the State also believes the trial court erred by ordering him to pay the restitution, we disagree.

{¶ 8} In support of his argument, Hewitt cites to *State v. Moody*, 2d Dist. Greene No. 2011-CA-29, 2013-Ohio-2234. In *Moody*, the appellant was a registered sex offender who was convicted of attempted failure to provide notice of a change of residence. *Id.* at ¶ 1. At sentencing, the trial court ordered the appellant to pay $302.94 in restitution to the Greene County Sheriff's Department for unknown expenses incurred in the investigation. Thereafter, the appellant appealed from the order of restitution. *Id.* at ¶ 9.

**{¶ 9}** In deciding the appeal, we noted that "[p]ursuant to R.C. 2929.18(A)(1), a trial court may order '[r]estitution by the offender to the victim of the offender's crime * * * in an amount based on the victim's economic loss.' " *Id.* at ¶ 11, quoting R.C. 2929.18(A)(1). However, we recognized that law-enforcement agencies are not entitled to restitution for funds spent in the performance of their investigative or other duties. *Id.* at ¶ 12. We also noted that a defendant can consent to pay restitution to a law-enforcement agency pursuant to a plea agreement, but the mere inclusion of language in a plea form listing restitution as a possible financial sanction does not establish consent. *Id.* Thus, we held the trial court in *Moody* erred by ordering the appellant to pay restitution to the Greene County Sheriff's Department because it was not authorized by R.C. 2929.18(A)(1) and the appellant had not consented to the restitution as part of his plea agreement. *Id.* at ¶ 16. We recently followed our holding in *Moody* in *State v. Payne*, 2d Dist. Clark No. 2014-CA-21, 2015-Ohio-698, finding the trial court erred in ordering the appellant to pay restitution to the Clark County Sheriff's department for money spent on controlled drug purchases by a confidential informant. *Id.* at ¶ 6.

**{¶ 10}** The present case, however, is distinguishable from both *Moody* and *Payne*. Unlike *Moody* and *Payne*, the $125 restitution order at issue in this case accrued as a result of the Piqua Police Department sending the substance found in Hewitt's vehicle to MVRCL for testing. Effective October 12, 2006, R.C. 2925.511 authorizes a sentencing court to order an offender to reimburse law enforcement agencies for the costs of tests to identify the controlled substance at issue, so long as the tests come back positive. H.B. No. 163, 2006 Ohio Laws 135.

**{¶ 11}** Specifically, R.C. 2925.511 states the following:

In addition to the financial sanctions authorized or required under sections 2929.18 and 2929.28 of the Revised Code and to any costs otherwise authorized or required under any provision of law, the court imposing sentence upon an offender who is convicted of or pleads guilty to a drug abuse offense *may order the offender to pay to the state, municipal, or county law enforcement agencies that handled the investigation and prosecution all of the costs that the state, municipal corporation, or county reasonably incurred in having tests performed under section 2925.51 of the Revised Code or in any other manner on any substance that was the basis of, or involved in, the offense to determine whether the substance contained any amount of a controlled substance if the results of the tests indicate that the substance tested contained any controlled substance.* No court shall order an offender under this section to pay the costs of tests performed on a substance if the results of the tests do not indicate that the substance tested contained any controlled substance. The court shall hold a hearing to determine the amount of costs to be imposed under this section. The court may hold the hearing as part of the sentencing hearing for the offender.

(Emphasis added.)

{¶ 12} In this case, the record indicates that the substance found in Hewitt's vehicle yielded positive results for cocaine when it was initially field tested. Following the field test, the substance was sent to MVRCL for additional testing. The presentence investigation report noted that the MVRCL analysis cost $125. The report also noted

that the author of the report "was not in receipt of the final [lab] results at the submission of this report[.]" The final results were not otherwise incorporated in the record; however, we presume the MVRCL test results showed positive results for cocaine since: (1) Hewitt pled no contest to possessing cocaine and admitted during the presentence investigation that he had cocaine in his car;[1] and (2) the initial field test showed positive results for cocaine. Based on these circumstances, it would not have been an abuse of discretion for the trial court to make the same presumption at sentencing when it ordered Hewitt to pay the cost of the MVRCL analysis. In addition, the cost of the MVRCL analysis was discussed, albeit briefly, as part of the sentencing hearing and was clearly stated in the presentence investigation report that was reviewed by the trial court. Accordingly, under R.C. 2925.511, the trial court did not err in ordering Hewitt to pay $125 in restitution to the Piqua Police Department for the testing performed by MVRCL.

{¶ 13} Hewitt's Second Assignment of Error is overruled.

## First Assignment of Error

{¶ 14} Hewitt's First Assignment of error is as follows:

THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING APPELLANT TO A NEAR-MAXIMUM SENTENCE.

{¶ 15} Under his First Assignment of Error, Hewitt claims the trial court's decision to impose a ten-month prison sentence was an abuse of discretion because the court

---

[1] Under the defendant's version of events, the presentence investigation report states the following: "In conjunction with the PSI, the Defendant wrote the following statement: 'was driving to a dentist appointment got pulled over with cocaine in car.' " The report also notes that Hewitt indicated "he was addicted to cocaine at the time of the Instant Offense, but that he has not used since the date of arrest."

weighed the sentencing factors in R.C. 2929.12 in an unreasonable and arbitrary manner. We disagree.

{¶ 16} In reviewing felony sentences, this court now applies R.C. 2953.08(G)(2) as the appellate standard of review. *State v. Rodeffer*, 2013-Ohio-5759, 5 N.E.3d 1069, ¶ 29 (2d Dist.). R.C. 2953.08(G)(2) states, in pertinent part, that:

> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929. 20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

{¶ 17} " '[C]ontrary to law' means that a sentencing decision manifestly ignores an issue or factor which a statute requires a court to consider." (Citation omitted.) *State v. Lofton*, 2d Dist. Montgomery No. 19852, 2004-Ohio-169, ¶ 11. "[A] sentence is not contrary to law when the trial court imposes a sentence within the statutory range, after expressly stating that it had considered the purposes and principles of sentencing set forth in R.C. 2929.11, as well as the factors in R .C. 2929.12." *Rodeffe*r at ¶ 32, citing *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 18.

{¶ 18} Hewitt concedes that his sentence cannot be modified or vacated under the standard of review set forth in R.C. 2953.08(G)(2). Specifically, he concedes that the trial court had discretion to impose a prison term under R.C. 2929.13(B)(1)(b)(x), that his ten-month prison sentence was within the prescribed statutory range for fifth degree felonies, and that the trial court considered the purposes and principles of sentencing under R.C. 2929.11 and R.C. 2929.12. Nevertheless, in conjunction with the standard of review in R.C. 2953.08(G)(2), Hewitt urges this court to also review his sentence for an abuse of discretion. However, R.C. 2953.08(G)(2) specifically states that "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion[.]" Regardless of this provision, even when reviewing Hewitt's sentence for an abuse of discretion, we find no error.

{¶ 19} "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary. An abuse of discretion includes a situation in which a trial court did not engage in a ' "sound reasoning process." ' Abuse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court." (Citations omitted.) *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34, quoting *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 20} As previously noted, Hewitt contends his ten-month prison sentence was an abuse of discretion because the trial court weighed the seriousness and recidivism factors in R.C. 2929.12 in an unreasonable and arbitrary manner. In support of this

claim, Hewitt argues the trial court's "more serious" finding under R.C. 2929.12(B)(2), i.e., that he caused the victim serious economic harm as a result of the offense, was made in error because it was based on the $125 fee for the drug testing, which he claims does not amount to serious economic harm and was not to be paid to the victim, but rather the Piqua Police Department. Hewitt also notes that the trial court made a "less serious" finding under R.C. 2929.12(C)(3), i.e., that he did not cause or expect to cause physical harm to persons or property. Lastly, Hewitt contends the trial court should have considered that recidivism is unlikely under the factors set forth in R.C. 2929.12(D)(5) and (E)(5) because he was genuinely remorseful for his offense.

{¶ 21} With respect to genuine remorse, the trial court was not obligated to believe Hewitt's claim that he was remorseful, as the court was free to determine the remorseful factor for itself, and it was not obligated to weigh the factor in Hewitt's favor. Hewitt's claim otherwise is simply incorrect.

{¶ 22} As for the trial court's finding that Hewitt caused the victim serious economic harm, we find the trial court partially rectified the finding on the record after Hewitt's trial counsel objected to it at the sentencing hearing. In response to Hewitt's objection, the author of the presentence investigation report clarified that the finding was made in the report as a result of the Piqua Police Department's economic loss. Thereafter, the trial court noted the clarification on the record and stated it was "the economic harm that [was] the result of Defendant's conduct." Sentencing Trans. (Feb. 18, 2015), p. 14. We find that this statement sufficiently negated the trial court's initial finding that the economic harm suffered by the Police Department was *serious;* therefore, that finding no longer had any effect.

**{¶ 23}** Nevertheless, the trial court's modified finding still implies that the Piqua Police Department was a victim that suffered economic harm. A law enforcement agency cannot be characterized as a victim entitled to restitution as the result of economic harm that arose out of its investigation of the offense. *State v. Jones*, 7th Dist. Jefferson Nos. 08 JE 20, 08 JE 29, 2010-Ohio-2704, ¶ 44-47 ("the government or a police department is not a victim merely because they expended funds in order to gather evidence against the offender"), citing *State v. Samuels*, 4th Dist. Washington No. 03CA8, 2003-Ohio-6106, ¶ 5. (Other citation omitted.) *Accord State v. Christian*, 2d Dist. Montgomery No. 25256, 2014-Ohio-2672, ¶ 126-129, *vacated on other grounds*, 143 Ohio St.3d 417, 2015-Ohio-3374, 38 N.E.3d 888.

**{¶ 24}** Regardless, we find the trial court's error in characterizing the Piqua Police Department as a victim is harmless error. We come to this conclusion because pursuant to R.C. 2925.511, the trial court was permitted to order Hewitt to pay the Department for the cost of the drug testing and Hewitt's ten-month prison sentence was reasonable in light of all the other factors weighed by the trial court at sentencing. For example, during the sentencing hearing, the trial court found that several other recidivism factors under R.C. 2929.12(B) applied and indicated that recidivism was likely. Specifically, the trial court found, based on the presentence investigation report, that recidivism was likely because Hewitt was on bail awaiting trial or sentencing when the offense was committed; had a history of juvenile adjudications and criminal convictions; and failed to respond favorably to past sanctions, which included a prior prison term. The presentence investigation report also indicated that Hewitt previously had his probation revoked.

**{¶ 25}** Also, upon reviewing the record, we find that Hewitt's extensive criminal

history is, by itself, a reasonable basis to affirm his ten-month prison sentence, as the trial court summarized his lengthy criminal record as follows:

> I had a chance to look over the PSI that was done by Ms. Scott, and some things to be noted are your extensive criminal record both as a juvenile and as well as an adult. Specifically in 1993 you had an Assault charge in Juvenile Court where you received four hours of Community Service, and 1995 you had another Assault where you also received twelve hours of Community Service. In 1996 you had an Assault with twelve hours Community Service. In 1995 you had a Robbery where you were placed on probation and were—did a temporary stint at the DYS. Again in 1996 you had Criminal * * * Damaging and a Contempt charge and conviction and where you got twelve and twenty hours of Community Service. Again in '97 you had another Assault, twelve hours of Community Service; 1998 a Squealing Tires and Criminal Damaging where those were brought to the Juvenile Court's attention. You received fines and costs and had to pay restitution. * * *

> Now as an adult you had a Felonious Assault case which was bound over in 2000. And as part of that incident you had an Aggravated Assault where you served twelve months in ODRC [.] * * *

> Let's see—again in 2002 you had an Assault, which was amended to Attempted Assault, did a hundred twenty-eight days (sic) sentence, as well as a ninety day sentence with fines and costs. In 2005 you had a Disorderly Conduct which was amended from an Assault, thirty days

suspended. 2005 an Open Container. 2006 a DUI/Physical Control and Reasonable Control, thirty days suspended as well as fines and costs. 2007 you were convicted of * * * Willful Wanton Disregard of Property as well as—that was well just that one charge where you received a one-year probation sentence. 2007 Disorderly Conduct, amended from an Assault, thirty days suspended. 2008 Disorderly Conduct, fines and costs. 2008 Disorderly Conduct, fines and costs. 2009 Obstructing Official Business, fines and costs; 2010 Disorderly Conduct, again in 2010 an Attempted Assault where you received probation and had a revocation hearing and put back on probation as well. 2010 a Disorderly Conduct, fines and costs. 2011 Domestic Violence, thirty days suspended. 2012 an OVI, another 2012 Assault—two counts, a hundred eighty – eighty days suspended, placed on probation, fines, costs, restitution. 2012 a Menacing that was part of your two years' probation in the earlier charge. As part of this incident you had the Physical Control, While Under the Influence, which you noted as being currently on probation through Municipal Court.

Sentencing Trans. (Feb. 18, 2015), p. 6-9.

**{¶ 26}** For the foregoing reasons, we do not find the trial court abused its discretion when it weighed the seriousness and recidivism factors in R.C. 2929.12, as the recidivism factors, especially Hewitt's extensive criminal history, provided a reasonable basis for imposing the ten-month prison sentence at issue.

**{¶ 27}** Hewitt's First Assignment of Error is overruled.

**Conclusion**

{¶ 28} Having overruled both assignments of error raised by Hewitt, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

HALL, J., concurs.

DONOVAN, J., concurring in part and dissenting in part:

{¶ 29} I disagree with the majority's resolution of the second assignment of error. The PSI lists a single seriousness factor out of nine factors. Specifically, it notes, and the judge made a finding that, the "Victim suffered serious physical, psychological or economic harm as a result of the offense." Under "Explanation," the PSI indicates "Economic loss incurred by Piqua Police Department (drug analysis)."

{¶ 30} Assuming arguendo, the court modified its finding from "serious economic harm" to "economic harm" (a fact which is not clear to this author), the law, in my view, is clear that the Piqua Police Department cannot be characterized as a "victim" under R.C. 2929.12(B)(2) in a drug possession offense. "[A] police department is not a victim of an offense when the only economic harm arising out of the offense is the cost of investigating that offense," *State v. Moody*, 2d Dist. Greene No. 2011-CA-29, 2013-Ohio-2234, ¶ 12 (citing in part *State v. Jones*, 7th Dist. Jefferson Nos. 08 JE 20, 08 JE 29, 2010-Ohio-2704, ¶ 40, 47, which found plain error where the trial court ordered Appellant to pay restitution to the government, noting "that the government is not a victim under the restitution statute merely because it expended funds in some manner as a result of the defendant's offense.") The fact that the Piqua Police Dept. can recoup the expense of

lab analysis under R.C. 2929.511 does not make them a victim for purposes of sentencing.

**{¶ 31}** The question of who constitutes a victim under R.C. 2929.12(B)(2) is reviewed under a de novo standard. *See generally State v. Hunter*, 2d Dist. Montgomery No. 25521, 2013-Ohio-3759, ¶ 7. In relevant part, R.C. 2930.01(H) defines victim as "a person who is identified as the victim of a crime. . . in a police report or in a complaint, information or indictment that charges the commission of a crime and that provides the basis for the criminal prosecution . . . ." The bill of information filed against Hewitt does not identify the police as the victim, nor should it. In this case, it is an error of law to characterize the Piqua Police Dept. as the victim for purposes of sentencing analysis.

**{¶ 32}** Accordingly, I would reverse and remand for resentencing as to the restitution issue.

. . . . . . . . . . .

Copies mailed to:

Paul M. Watkins
Andrew C. Schlueter
Hon. Jeannine N. Pratt